ARTHUR CRISFIELD, HENRY PAGE, and others, *vs.*
WILLIAM W. STORR and JOHN H. STORR.

*When there is no Merger of the Life estate in the Fee
in remainder—Infant en ventre sa mere—Collateral
warranty—Statute of IV Anne, ch. 16—Joinder of
plaintiffs in an action on Covenant for Title—Cove-
nants for Title, by whom enforced—Necessary aver-
ments in the Declaration in an action on a Covenant
for Title—Measure of Damages recoverable by the
Assignee of a Covenantee, in an Action on warranty
of Title—Joint liability of the Heirs of the Cove-
nantor in an action on a covenant of Warranty—
Limitations—Right of a Covenantee or his assignee
who has suffered Eviction, to recover primarily
against the Heirs of the Covenantor—Evidence.*

A testatrix, in 1837, devised certain real estate to her daughter S. B, for
life, with a limitation over as follows: " But if the said S. B shall have
a child to cry, then it is my will and desire that said land should go to
the said child; but if the said child should die, then it is my will and
desire that the said land should go to A. S. P during his natural life,
and then it is my will and desire that it should go to G. W. P, to him
and his heirs lawfully begotten, forever, in fee simple." On the
24th of May, 1842, S. B and her husband conveyed said real estate to
H. P in fee, with a covenant of warranty against all persons except A.
S. P, who had on the previous day conveyed all his interest in said
land to the said H. P. On the 25th of September, 1842, S. B had a son
W. E. S. B, born alive. On the 24th of January, 1843, H. P and wife
conveyed said estate to L. S. H, in fee with warranty, who conveyed it
to T. S, in fee with warranty, who devised it to his two sons, against
whom a judgment was recovered by W. E. S. B, in an action of *eject-
ment.* In a suit brought by them against the heirs-at-law of H. P, on
the covenant of warranty in his deed to L. S. H, it was HELD :

1st. That there was no merger of the life estate which S. B took under
her mother's will, in the fee which descended to her as heir-at-law of
her mother, for the reason that the fee descended from the same person
under whose will the life estate was taken; and the life estate began
and the fee descended at the same instant.

9          

2d. That at the date of the deed to H. P from S. B and her husband, W. E. S. B being *en ventre sa mere*, the remainder in fee devised to him had become vested.

3d. That W. E. S. B was not barred from recovering the land devised to him, by the collateral warranty of S. B and her husband, which descended upon him; such warranty as against him was void under the Statute of IV Anne, ch. 16, for at the time of the warranty, the remainder had vested in him, and S. B had only a life estate in the land.

An infant *en ventre sa mere*, is to be deemed *in esse* for the purpose of taking a remainder, or any other estate or interest which is for his benefit.

A testator devised certain land to his two sons in severalty; a judgment having been recovered against them in an action of *ejectment* for the premises, by one having a paramount title, they brought suit on a covenant of warranty declaring jointly against the heirs-at-law of the covenantor. On demurrer to the *narr.* it was objected that there was a variance between the *narr.* and the proof, the *narr.* alleging that "the hereinbefore described premises" were devised to the plaintiffs by their testator, which imported a joint devise, while his will showed that he devised the land to them in severalty. HELD:

That the covenant of the warrantor ran with the land and came to the plaintiffs who stood in the place of the original covenantee, and they had therefore a joint interest in the covenant as against the covenantor, although their interests as between themselves were several; and consequently they had the right to join in the action.

Covenants for title run with the land, inure to the protection of the owner, for the time being, of the estate which they are intended to assure, and they may be enforced not only by the covenantee and his representatives, but by his heirs, devisées and aliences.

In actions on covenant of warranty it is necessary to prove that the eviction of the plaintiff was had under a title paramount, and existing at the date of the covenant, and the *narr.* must so allege, and if it fail to do so, it will be held bad on demurrer.

In an action of covenant for title by the assignee of the covenantee, the measure of damages is the consideration which the assignee paid to his immediate grantor, with interest from the date of the eviction, and costs in the ejectment suit; with the limitation however that the amount recovered cannot exceed the consideration received by the covenantor for the same lands.

Crisfield, *et al. vs.* Storr.

In an action of covenant of title by the assignee of the covenantee, counsel fees paid by him in defending the ejectment suit, cannot be recovered as part of the damages, he having voluntarily undertaken · to defend his title instead of giving notice to the covenantor or those bound by the covenant, to do so.

Where notice is given to the covenantor or those bound by the covenant, and they refuse to defend the title, the covenantee or his assignee has the right to employ counsel for that purpose; and may recover in an action on the covenant such reasonable fees as he has been compelled to pay.

Where an action is brought on a covenant of warranty against the heirs of the covenantor, they are jointly liable, and the verdict should be against them *in solido.*

In actions on covenants of warranty, limitations do not begin to run until there is a breach of the covenant.

A covenantee or his assignee who has suffered eviction, is not bound to seek satisfaction of his claim out of the personal estate of the covenantor before recovery can be had against his heirs.

In an action on warranty of title against the heirs of the covenantor, by the assignee of the covnantee, the record of the ejectment suit is admissible as evidence against the defendants, to prove the fact of the judgment of eviction, although they had received no notice of the pendency of the suit in ejectment.

APPEAL from the Circuit Court for Dorchester County.

The case is stated in the opinion of the Court.

*Exception:* The plaintiffs offered the two following prayers:

1. That if the jury believe from the evidence that Arthur Crisfield, Henry Page, Frances Dyer and Elizabeth O. Jewett in the declaration mentioned, are the heirs of Henry Page, deceased, mentioned therein, and that Isaac W. Jewett is the husband of the said Elizabeth O. Jewett, and that the said Henry Page, deceased, in his lifetime executed and delivered the deed to Leah S. Howard offered in evidence to the jury, and that the said Leah S. Howard afterwards executed and delivered the deed to Thomas Storr offered in evidence to the jury, and that the said Thomas Storr afterwards departed this life, having first duly made his last will and testament offered in evidence, and that the lands mentioned in the deed afore-

said, and in the first and second items of the said will, are the same, and that the plaintiffs in this action are the same persons who are mentioned in the said items of said will as "John" and "William," and that afterwards, to wit, on the 7th day of May, A. D., 1868, a certain William Eugene Sulivane Bradshaw recovered the judgment in ejectment in this Court, for one undivided half of the lands aforesaid, in the ejectment suit against the plaintiffs in this action, the record of proceedings in which was offered in evidence to the jury, by virtue of an elder and better title than that of said Page, on whose covenant this suit is brought, and that in pursuance of said judgment the plaintiffs yielded possession of the land recovered in said judgment, then they must find a verdict for the plaintiffs in this action.

2. That if the jury find the facts set forth in the plaintiffs' first prayer, and find their verdict for the plaintiffs, the measure of damages should be one-half the consideration mentioned in the deed from Henry Page and wife to Leah S. Howard, with interest upon the same from the time the plaintiffs were evicted by William Eugene Sulivane Bradshaw, as stated in the first prayer, down to the present time, together with the legal costs in the said ejectment suit, and also such sum in addition as may have been paid by the plaintiffs in this action, by way of fee to their counsel in said ejectment suit, if they believe from the evidence that such fee was reasonable.

The defendants offered the following prayers :

1. That if, from the evidence in the cause, the jury shall believe that Thomas Watson had title to the land in the declaration mentioned, and conveyed one moiety thereof to Mary Watson, by his deed offered in evidence, and died leaving Sally Bradshaw his sister and only heir-at-law, to whom the remaining half part of the land descended upon the death of the said Thomas; and shall further find, that Mary Watson made and executed her will offered in evidence, and died, leaving the said Sally Bradshaw, wife of Joseph Bradshaw,

her only child and heir-at-law, and that Joseph Bradshaw and the said Sally, his wife, made and executed the deed for the said premises from them to Henry Page offered in evidence, and that the said Henry Page, in virtue of the said deed, entered into possession of the said premises and was seised thereof, and being so seised and possessed thereof, conveyed the same to Leah S. Howard, by deed from himself and wife to the said Leah, offered in evidence, their verdict must be for the defendants, although they may believe that the said Sally Bradshaw, after the execution of her said deed to the said Henry Page, gave birth to a child which lived to cry.

2. That if the jury shall find that Sally Bradshaw was entitled to the premises in the declaration mentioned, as stated in the first prayer, and she, with her husband, conveyed the same to Henry Page, by their deed of the 24th of May, 1842, offered in evidence, who entered into possession and was seised thereof before the birth of the said Wm. E. S. Bradshaw, and that the said Page, being so seised of the said premises, conveyed the same to Leah S. Howard by his deed to her offered in evidence, then their verdict must be for the defendants, although they should find the judgment and eviction of the plaintiffs offered in evidence.

3. If the verdict should be for the plaintiffs, the proper measure of damages are :

First. The consideration paid by the plaintiffs for the premises recovered, with interest from the date of eviction.

Second. Reasonable counsel fees actually paid for the defence of said suit, with interest as stated above.

Third. Costs of the said suit, taxed by the plaintiffs, before the bringing of this suit, with interest from the time of payment.

4. That if the jury believe from the evidence, that after the trial and judgment in the case, the record and docket entries of which have been offered in evidence by the plaintiffs, (the case of *Bradshaw vs. Storr,*) an arrangement was entered into between the plaintiffs, or their counsel authorized to act

on their behalf, and the said Wm. Eugene Sulivane Bradshaw, or his counsel, similarly authorized, by which it was agreed between them that the plaintiffs should abandon their appeal in said case, and give up to said Bradshaw the land in the proceedings in said cause mentioned, and that said Bradshaw should relinquish all claim he might have against them for the rents and profits of said land, and that in pursuance of said mutual agreement the plaintiffs abandoned their said appeal, and delivered the possession of the said land to the said Bradshaw, and the said Bradshaw relinquished his said claim for rents and profits, then they must find a verdict for the defendants.

The Court (FRANKLIN and IRVING, J.) granted the prayers of the plaintiffs and rejected those of the defendants. To this action of the Court the defendants excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*Wm. Shepard Bryan* and *J. W. Crisfield*, for the appellants.

The declaration in this case is fatally defective:

1st. *For variance.* In the first count it is charged that Thomas Storr devised "the hereinbefore described premises to the plaintiffs," which is the devise of an estate in common; whereas, by the will of Storr, exhibited on oyer, estates are devised to them in severalty.

In the second count the covenant sued on is set out as the covenant of Henry Page alone, and his heirs; by the deed and covenant exhibited on oyer, it is the joint covenant of Henry Page and Charlotte Page, his wife, and their heirs jointly.

2d. Because the parties sued are not the parties liable, if in fact there has been any breach of the covenant. The parties sued are the heirs of Henry Page; the parties covenanting are "Henry Page and Charlotte, his wife, for themselves and

their heirs," and it is not averred, and is not the fact, that Page survived his wife. The covenant is joint, and his survivorship will not be intended, and unless he did survive, his heirs are totally discharged. *Bacon's Abr., Obligation D*, 4.

And if the covenant as to Mrs. Page be void, by reason of her coverture, it will not change the covenants as to Page; it will then stand, Henry Page covenants for himself, his wife and their heirs, and hence it follows that, as *heir*, no one is bound who does answer the description of " their heirs," that is, the joint heirs of the two. When the obligation exists only by virtue of the covenant, its extent can be measured only by the words in which it is conceived. *Platt on Covenants*, 121.

The heir is liable on the covenantor's obligation only because he is named, and has assets by descent. 2 *Black. Com.*, 243; *Platt on Covenants*, 305.

Only those who could take assets by descent are liable, and such only could be the children or descendants of the covenantors. The declaration, failing to aver that the persons sued are the persons described and liable by the express words of the covenant, is wholly insufficient and must fail.

3d. Because the breach assigned is not within the terms of the covenant. The defendants are sued as the " heirs of Henry Page," and the declaration, after setting out the covenant, and the right of the plaintiffs, proceeds : " but the plaintiffs in fact say that the defendants have not warranted the said premises to the plaintiffs, as by the said covenant of the said Page, they, his heirs, were bound to do, but on the contrary," &c.; and after setting out Bradshaw's recovery and their eviction, concludes, " and so the plaintiffs say that the said defendants have not kept the said covenant of the said Henry Page, but have broken the same," &c. If the covenant be void as to Mrs. Page, by reason of her coverture, as it is conceded to be, that fact does not alter it as respects her husband. Her name and her heirs still remain parts of the instrument; and as to Page, it must be construed precisely as

it would be if her liability existed. His contract then was, that he, his wife and their heirs shall warrant and defend. He covenants for himself and his heirs, that he and certain other persons, who are certainly described, shall do a certain thing which might be performed by any one of them. If it is done by any of the said persons, his covenant is kept, and it is not broken till all, by whom it rightfully might be done, have had notice and have refused or failed to keep it. The breach assigned is that the defendants, who are the heirs of Henry Page, have not warranted and defended, *non constat* but that others, who are equally within the terms of the covenant, have. The declaration then in this respect is defective in two particulars : *first,* it does not aver that Page, his wife and their heirs have not warranted ; and *second,* it does not allege that they had notice of Bradshaw's claim or eviction, without which they were not in default for not warranting.

4th. Because the plaintiffs are misjoined. In the first count it is averred that Thomas Storr devised an estate in common to the plaintiffs which, as has already been shown, is a variance from his will exhibited on oyer ; but, if that be not fatal as to that count, then it appears by the will that the plaintiffs took estates in severalty, and so it alleged in the second count. Their interest being several, they cannot join in the suit. 1 *Chitty's Plead.,* 10 ; *Slater vs. Magraw,* 12 *G. & J.,* 270 ; *Eccleston vs. Clipsham,* 1 *Saunders' Reports,* 153 ; *James vs. Emory,* 5 *Price,* 529 ; *James vs. Emory,* 8 *Taunton,* 245 ; *Platt on Covenants,* 130.

5th. The declaration is insufficient, because it does not aver that Bradshaw recovered by a title older and better than that of the covenantor, at the time of making the covenant. The declaration alleges merely that Bradshaw recovered from the appellees by "an older and better title." This is too general, and would be bad even after verdict, for it will be intended that the title of the person entering is derived from the plaintiff himself. It is not merely necessary to allege that the eviction was made under paramount title, but, it must be

added, existing before and at the time of the conveyance to the plaintiff, as the eviction might be under a paramount title, but one which had been derived from the plaintiff himself, for which of course the covenantor would not be responsible. *Wootton vs. Hele,* 2 *Wms. Saunders,* 181; *Rawle on Covts. for Title,* 161, 206; *Frost vs. Earnest,* 4 *Wharton,* 86; *Naglee vs. Ingersol,* 7 *Barr,* 205; *Jordan vs. Twells, Hardw.,* 172.

The Court below erred in granting the first prayer of the plaintiffs, for the following reasons:

1st. Because it did not require the jury to find that the defendants had assets by descent from the covenantor; and in effect decides that assets by descent are not necessary to fix the heir's liability on the covenant of the person whose heir he is. This is erroneous. Two circumstances must concur to create the heir's liability: first, it is requisite that the terms of the covenant specially provide for its performance by the heir; and secondly, that the heir had assets by descent from the covenantor to answer the claim; for though the covenant descends to the heir, whether he inherits any estate or not, it lies dormant, and is not compulsory until he has assets by descent. *Platt on Covenants,* 449.

2d. Because it leaves to the jury to find whether Bradshaw did not recover by title alone, and better than that of Page, the covenantor. This is a question of law which the jury are not competent to decide; and it was error in the Court below to submit it to them. And again, not being averred in the declaration, it could not be proved or found by the jury.

3d. Because it assumes and instructs the jury, that Bradshaw's judgment in the ejectment cause is conclusive evidence of title to bind the defendants below. The record of that recovery was evidence to show that the eviction was compulsory, and by due process of law, and not voluntary; but as evidence of title, or of anything decided thereby, it is not evidence at all against the appellants, either *prima facie* or conclusive. The appellants were not parties to that suit, nor

had they notice of it; as to them it is *res inter alios acta.*
The appellees, to make out their case against the appellants,
must bring proof *dehors* that record. 1 *Greenleaf's Ev., secs.*
522, 523, 538, 539; *Tyler vs. Ulmer,* 12 *Mass.,* 166; *Rawle
on Cov. for Title,* 198, 207, 208; *Booker vs. Bell,* 3 *Bibb,* 175;
*Prewit vs. Kenton,* 3 *Bibb,* 282; *Cox vs. Strode,* 4 *Bibb,* 4;
*Hanson vs. Buckner,* 4 *Dana,* 272; *Graham vs. Tankersley,*
15 *Alabama,* 645; *King vs. Norman,* 4 *Com. Bench,* 883; 2
*American Leading Cases,* 345; *Somerville vs. Hamilton,* 4
*Wheaton,* 230; *Blasdale vs. Babcock,* 1 *John. Rep.,* 517.

4th. This instruction does not raise the question of Brad-
shaw's title, or submit to the jury to find the facts which
make up his title; but all these facts are withdrawn from
their consideration, and the appellants' right to recover is
made to depend solely on the record in Bradshaw's recovery,
which is erroneous.

The defendants in the Court below offered two prayers
respecting the covenantor's title, and the Court rejected both.
They ought to have been granted.

There is ample evidence in the case from which the jury
found every fact stated in those prayers. Assuming, then,
as the Court must, that every fact was stated in the prayers,
the question, then, for the determination of the Court is,
what was Page's title at the time he made the covenant sued
on; what title became vested in him by virtue of the deed
to him from Bradshaw and wife?

Sally Bradshaw was the devisee of Mary Watson, and also
her heir-at-law. Mary Watson had a fee simple estate in
one-half of the lands conveyed to Page. Whatever estate
Mary Watson had, either passed by the devise in her will, or
descended to Sally Bradshaw, who is the same person as her
heir-at-law. What, then, did the will pass?

The Court below held that Sally Bradshaw took under the
will an estate for life, with contingent remainder to her child
or children, in fee, with a devise over to the Piercys, on con-
dition of the death of such child in the lifetime of the life.

tenant.  This construction is conceded.  The fee, then, being disposed of only on the contingency of the birth of a living child, until that contingency happened, it descended to Sally Bradshaw as heir-at-law.

Sally Bradshaw, then, under the will of her mother, took a life estate, and as heir-at-law she took the reversion in fee, liable to be defeated by the birth of a child which should live to cry.  In this state of her title, and before the birth of a child, she and her husband made the deed of the 24th of May, 1842, and put Page into full possession.  What effect had that deed and the surrender of possession on the contingent remainder to the unborn child?

It put an end to the particular estate, and destroyed the contingent remainder dependent upon it, and vested the whole estate in Page, and that in two ways:

1st.  The deed, containing the words of a Common Law conveyance, give, grant, enfeoff, and being accompanied by the possession of the grantee, and being registered and recorded, might operate as a Common Law conveyance, and not as a deed of bargain and sale under the Statute; and no intention of the parties contravening, it operated as such, and its effect worked a forfeiture of the particular estate, and entitled the next entitled to come in.  No child, then, being *in esse*, the next party to come in was the reversioner, and the reversion was transferred to Page himself; or if regarded as a mere stranger, he took a new estate—all previous estates being discontinued and destroyed.  *Greenleaf's Cruise, Title* 16, *secs.* 2, 8, 10, 11, 13, 17; *Title* 32, *Deed, ch.* 9, *sec.* 4; *Fearne on Con. Rem.*, 316; 2 *Blk. Com.*, 310, *marg.; Com. Dig. Feoffment; Alexander's Brit. Stat.*, 298; *Matthews vs. Ward*, 10 *G. & J.*, 178; *Ware vs. Richardson*, 3 *Md.*, 505.

2d.  The deed conveyed to Page the life estate which Sally Bradshaw took in the will of her mother, and also the fee in her by descent, as heir-at-law of her mother; and when these two met in Page, the former became merged in the latter, and was utterly destroyed before the contingency happened on which the remainder was to vest.  This utterly defeated the

contingent remainder. *Greenleaf's Cruise on Real Property,*
*Title* 16, sec. 1 to 13; *Fearne on Con. Rem.,* 322, notes 323,
440, 341, 342, 343, 344; 4 *Kent's Com.,* 279; *Purefoy vs.*
*Rogers,* 3 *Wms. Saunders,* 380.

The Court erred in granting the second prayer of the
plaintiffs. Both sides asked instructions of the Court as to
the measure of damages — the plaintiffs insisting that the
measure of damages, in case the jury found for them, was
one-half of the consideration mentioned in the deed from
Page to Howard; the defendants, on the other hand, con-
tending it was the consideration paid by the plaintiffs for
the premises recovered, with interest, &c.

Purchase money, with interest, is the utmost extent of the
vendor's liability; Storr would have recovered from Howard
no more; nor could Howard have recovered from Page more
than she was obliged to pay Storr. To allow the assignee
to pass by his immediate covenantor, and recover from the
original covenantor, a sum greater than his purchase money,
would be inequitable and a violation of the well established
law. Mrs. Howard had assigned, with warranty, her interest
in the land to Storr, and was not damaged by Storr's evic-
tion. Storr was damaged only to the extent of his purchase
money; the instruction of the Court allows him to recover
one-third more than the law says he is injured. This is both
unjust and unreasonable. *Rawle on Cov. for Title,* 263; 4
*Kent's Com.,* 477, (*marg.*)

*Clement Sulivane* and *Daniel M. Henry,* for the appellees.

Under the will of Mary Watson, Sally Bradshaw took an
estate for life in the land in dispute, and William E. S. Brad-
shaw a contingent remainder in fee simple. The rule in *Shel-*
*ley's Case* does not apply. *Lyles vs. Digges' Lessee,* 6 *H. & J.,*
364; *Horne vs. Lyeth,* 4 *H. & J.,* 431; *Ware vs. Richardson,*
3 *Md.,* 505; 1 *Fearne on Con. Rem.,* 108; 2 *Jarman on Wills,*
241, 246; 4 *Cruise's Digest,* 334; 6 *Cruise's Digest,* 276, 317;
*Act of* 1825, *ch.* 119; 4 *Kent's Comm.,* 240, 241, 257 *and note.*

The estate devised to Algernon S. Piercy was a contingent remainder for life, and that devised to George W. Piercy a contingent remainder in fee simple. Both were contingent on Sally Bradshaw's dying without issue living at her death. The reversion in fee descended to Sally Bradshaw as heir-at-law, and remained vested in her until the happening of the contingency, *i. e.*, the birth of W. E. S. Bradshaw. 4 *Kent's Comm.*, 265, 266; 1 *Fearne on Remainders*, 513 to 520; 2 *Cruise's Digest*, 386, 387, 388; *Loddington vs. Kime*, 1 *Salkeld*, 224; *Plunket vs. Holmes*, Sir *T. Raymond*, 28; *Purefoy vs. Rogers*, 3 *Saunders*, 380; *Pells vs. Brown*, *Cro. Jac.*, 590; *Hooker vs. Hooker*, *Hardwicke*, 13; *Doe Dem. Herbert vs. Selby*, 2 *Barn. & Cress.*, 926; *Boothby vs. Vernon*, 9 *Mod.*, 147.

Sally Bradshaw's life estate did not merge in her vested reversion in fee simple, for the reason that she was *immediate* heir-at-law of the devisor. 4 *Kent's Comm.*, 262, 265, 266; *Fearne on Remainders*, 42, 43, 499 to 510; *Plunket vs. Holmes*, Sir *T. Raymond*, 28.

The conveyance of Joseph and Sally Bradshaw to Henry Page, was an innocent conveyance, either as a bargain and sale or a feoffment. [In point of fact it is a bargain and sale, as appears by the recitals both in the body of the deed and in its clause of warranty.] *Nicholson's Lessee vs. Hemsley*, 3 *Harris & M'Henry*, 418; *Matthews vs. Ward's Lessee*, 10 *G. & J.*, 448; 1 *Washburn on Real Estate*, 90; 2 *Washburn on Real Estate*, 640; 1 *Shars. Black. Comm.*, 2d Part, 152 and note, and 316 and note; *Fearne on Remainders*, 473; 2 *Cruise*, 318, 319; 4 *Cruise*, 55, 57, 88, 108, 120, 121, 126; 4 *Kent*, 104, 105, 110; 2 *Jarman on Wills*, 196.

The estate for life and vested fee (*sub modo*) of Sally Bradshaw did not merge in Henry Page. The remainder in fee vested in W. E. S. Bradshaw, *en ventre sa mere*, prior to the date of the conveyance from the Bradshaws to Page, and thereby had become a *vested*, and had ceased to be a *contingent* remainder at the time of said conveyance. 4 *Kent's Comm.*, 104, 105, 110, 249, 257, 258, 437; 2 *Cruise*, 296,

297, 298, 299; 2 *Jarman on Wills,* 74, 75, 76, *and notes; Fearne on Remainders,* 455.

The warranty of Joseph and Sally Bradshaw, tenants for life, did not bar W. E. S. Bradshaw, as the remainder was in fee simple   4 *Cruise,* 378, 379, 390; *Statute of IV Anne, ch.* 16;  4 *Kent's Comm.,* 524, 525, 533, 534, 535, (extent to which warrantor is bound.)

The warranty of Henry Page runs with the land, and the appellees had the right to claim either under said warranty or under the warranty contained in the subsequent deed from Leah S. Howard.   *Withey vs. Mumford,* 5 *Cowen,* 137, 143; 1 *Smith's Leading Cases,* 160; *Suydam vs. Jones,* 10 *Wendell,* 180; 2 *Robinson's Prac.,* 101, 103; 2 *Stephens' Nisi Prius,* 1141.

The measure of damages is the value of the land as ascertained by the deed containing the covenant on which the suit is brought.   *Pitcher vs. Livingston,* 4 *John.,* 1; *Morris vs. Phelps,* 5 *John.,* 49; *Waldo vs. Long,* 7 *John.,* 173; *Kelly vs. Dutch Church of Schenectady,* 2 *Hill,* 110; *Mumford vs. Withey,* 1 *Wend.,* 279; *Rickert vs. Snyder,* 9 *Wend.,* 416; *Staats vs. Ex'rs of Ten Eyck,* 3 *Caine,* 111; *Sweet vs. Bradley,* 24 *Barb.,* 549; *Sedgwick on Damages,* 152, 169, 180, 183, 184, 185; 3 *Washburn on Real Estate,* 419, 423.

GRASON, J., delivered the opinion of the Court.

In 1834, Thomas Watson conveyed one undivided half part of his farm in Dorchester county, known as the "Tootell Land," to his mother, Mary Watson, in fee, and afterwards died intestate, leaving his sister, Sally Bradshaw, wife of Joseph Bradshaw, his only heir-at-law, to whom the other half of said farm descended.   In 1837, Mary Watson died, having first executed a will in due form to pass real estate, by which she devised to Sally Bradshaw, for life, all that part of the farm which had been conveyed to her by Thomas Watson, with a limitation over as follows: "But if the said Sally Bradshaw should have a child to cry, then it is my will and

desire that the above-mentioned land should go to the said child; but if the said child should die, then it is my will and desire that the above-mentioned land should go to Algernon S. Piercy, son of the late George Piercy, during his natural life, and then it is my will and desire that it should go to George W. Piercy, to him and his heirs lawfully begotten, forever in fee simple." On the 24th of May, 1842, Joseph and Sally Bradshaw conveyed all said farm to Henry Page, in fee with a covenant of warranty against all persons who might thereafter claim the same under the will of Mary Watson, and against all persons whatsoever, except Algernon S. Piercy, who had, on the 23d of May, 1842, conveyed all his interest in said land to said Page. On the 25th of September, 1842, Sally Bradshaw had a son, William Eugene Sulivane Bradshaw, born alive. On the 24th of January, 1843, Henry Page and wife conveyed said land to Leah S. Howard, in fee with warranty, and on the 7th day of November, 1844, she conveyed the same to Thomas Storr in fee, with warranty. Thomas Storr died in the spring of 1866, having first made his will in due form to pass real estate, by which he devised one part of said land to his son William W. Storr, and the remaining part to his son John H. Storr. On the second day of July, 1867, William E. S. Bradshaw brought his action of *ejectment* against William W. and John H. Storr, to recover one-half of said land, devised to him in remainder by Mary Watson's will, and on the seventh day of May, 1868, recovered a judgment for the same. The defendants in the *ejectment* brought suit on the seventeenth day of March, 1870, on the covenant, of Henry Page, he and his wife being then dead, against his heirs, who are the appellants in this case. At the trial of the case below, a demurrer was filed to the *narr.* and was overruled, and exceptions were taken to the granting of the two prayers of the plaintiffs and to the rejection of the four prayers of the defendants, and the judgment being in favor of the plaintiffs, the defendants appealed.

It was admitted, at the argument of the case in this Court, that under the will of Mary Watson, Sally Bradshaw took a life estate in the one-half of the land named, with remainder in fee to her unborn child, and, in the event of such child dying, then with remainder over; and that the fee descended to Sally Bradshaw, *sub modo,* so as to let in her after-born child, in the event of one being born. It was contended however that the remainder, limited to Sally Bradshaw's unborn child, was a contingent remainder and that it was destroyed before the birth of the child, either by the merger of the life estate, which Sally Bradshaw took under her mother's will, in the fee, which descended to her as heir at law of her mother; or by the deed from Joseph and Sally Bradshaw to Henry Page, which it was alleged operated as a feoffment, or by the warranty of Joseph and Sally Bradshaw, which being a collateral warranty descending from them to W. E. S. Bradshaw, their heir, barred his recovery. We do not think that either of these points is tenable. In the first place there was no merger of the life estate in the fee in Sally Bradshaw, for the reason that the fee descended from the same person, under whose will she took the life estate, and the life estate began and the fee descended at the same instant. *Fearne,* in his work on *Contingent Remainders, marg.,* 344, says: "Wherever a testator limits a contingent remainder, it is agreed that the inheritance descends to the heir only till the contingency happens; if so, nothing can be more absurd than to make such descent destroy the contingency. The will does not operate till the testator's death; the descent takes effect at the same time; so that, under such a construction, the particular estate, given to the heir by the will, arises and is destroyed in one and the same instant; and how is it destroyed? by the descent which that very same will permitted. This would be making a will and no will at the same time, and would, in effect, be saying, that a limitation of a particular estate in a will to a testator's heir-at-law, with a contingent remainder over without any ulterior vested remainder, must be void in

its creation. For it is evident that, under such a construction, the particular estate can never take effect at all, its existence and destruction commencing together; and that being destroyed, the contingent remainder over is also gone before it has even a moment's chance for existence." Now this would be making the will, in this respect, *ipso facto*, void. See also *Plunket vs. Holmes*, 1 *Lev.*, 11 ; *Boothby vs. Vernon*, 9 *Mod.*, 147 ; 4 *Kent's Comm.*, 253, 254. So that, even if the estate limited to the unborn child of Sally Bradshaw be a contingent remainder, it would not have been destroyed by a merger of Sally Bradshaw's life estate in the fee which descended to her as heir-at-law of her mother.

But there is another answer to this point, which applies with equal force to the point that the deed from Bradshaw and wife to Page operated as a feoffment, and is conclusive of both, even if that deed could be regarded as a feoffment, which we think its language and terms would not warrant us in holding it to be. At the date of that deed, William E. S. Bradshaw was *en ventre sa mere*, and the remainder became vested and was not contingent.

In the case of *Reeve vs. Long*, 1 *Salk.*, 228, *marg.*, it was held by the House of Lords, upon appeal from the Common Bench, that, where a testator devised an estate for life to his nephew, Henry Long, remainder to his first son in tail male, remainder to his successive sons, and in default of such issue, then over; and Henry Long died, his son born after his death took the remainder. Chancellor KENT, (4 *Comm.*, 249 *marg.*,) refers to the case of *Reeve vs. Long*, and says: "It is now settled law in England and in this country that an infant, *en ventre sa mere*, is to be deemed *in esse* for the purpose of taking a remainder, or any other estate or interest which is for his benefit." But it was argued that, as the remainder, in this particular case, was limited to such child as should be born *to cry*, it was dissimilar to a remainder to a child of Sally Bradshaw, and that it could not therefore vest until the contingency happened, that is, until a child was

Crisfield, *et al. vs.* Storr.

born, AND CRIED. Even if this were so, we have shown that there was no merger and no feoffment by which the contingent remainder could be destroyed. But it is evident that nothing more was intended by the use of the words, "*born to cry,*" than that the child should be born alive. This is made manifest by the terms used in the will in limiting the remainder over to Algernon S. Piercy, which was to take effect only in the event of such child *dying,* clearly showing that it was the testatrix's intention that the remainder to the unborn child of Sally Bradshaw should take effect if it was born alive. This being so, we have shown that the remainder vested in the child, *en ventre sa mere.*

It was also argued with much earnestness that William E. S. Bradshaw was barred from recovering the land in question, by the collateral warranty which descended upon him, and that the Statute of IV Anne, ch. 16, is not in force in this State. That Statute is found in *Kilty's British Statutes,* 246, among those which are in force in this State, and he says that the 21st section is proper to be incorporated as applicable to our circumstances; and as there is no case to be found in which a collateral warranty has been enforced in our Courts, we must presume that it has always been considered in force here, especially as it is peculiarly "applicable to our circumstances," and well adapted to the policy of our laws and system of government, which favor and facilitate the free disposition and transmission of real estate. The 21st section of the Statute provides that all warranties which shall be made after the time therein mentioned by any tenant for life, of any lands, &c., the same descending or coming to any person in reversion or remainder, shall be void; and that all collateral warranties of any lands, tenements or hereditaments made by any ancestor who has no estate of inheritance in possession in the same, shall be void against the heir. The warranty of Bradshaw and wife to Page is therefore void as against Wm. E. S. Bradshaw, and cannot affect his right of recovery against the defendants in the action of *ejectment,* because at

Crisfield, *et al. vs.* Storr.

the time of the warranty the remainder had, as we have shown, vested in him, and Sally Bradshaw had then a life estate only in the land.

Having shown that none of the objections urged against the right of Wm. E. S. Bradshaw to recover the one-half of the Tootell land, devised to him by Mary Watson, are valid, it becomes necessary to consider the objections raised to the rulings of the Court below during the progress of the trial, and first, those raised by the demurrer to the declaration. It is alleged that there is a variance between the *narr.* and the proof, the *narr.* alleging that the "herein described premises were devised to the plaintiffs" by Thomas Storr, which imported a joint devise, whereas his will shows that he devised the land to them in severalty. This also involves the question of the alleged misjoinder of the plaintiffs. Henry Page's covenant ran with the land and came to the devisees of Thomas Storr, who stood in the place of the original covenantee, and therefore they had a joint interest in the covenant as against the covenantor, although their interests, as between themselves, were several, and consequently they had the right to join in the action. Had they sued separately, it might well have been objected that separate suits could not be maintained, because it would be impossible to ascertain what proportion of the damages should be awarded to each, especially as it does not appear what proportion of the land in question in the *ejectment* suit, was devised to the plaintiffs in this case, respectively. It was for the interest and convenience of the appellants that the appellees should sue jointly and have but one recovery. In the case of *Paul vs. Witman,* 3 *Watts & Sergt.,* 409, it was said, "whether the plaintiffs can sustain a joint suit is a point not without difficulty. The contract was made with the testator; and it would be unreasonable that he should be at liberty, by devising the land in separate parcels, to subject the warrantor to as many actions as there are devisees. Suppose the warrantor, on eviction of the warrantee, is ready and willing to pay, how is he to ascertain the propor-

tion to which each of the devisees is entitled, when the portions of the real estate devised are of unequal value? Is the warrantor to be liable to as many suits as there are heirs? Although, as between themselves, their interests are several, yet, as respects the warrantor, they hold a joint interest, and as such may sue jointly." There is much force in this reasoning, and the decision lays down the correct rule of law by which such a case as this ought to be governed.

It was further contended that, by the true construction of the covenant of Henry Page and wife, it bound their *joint* heirs only, whereas the parties sued thereon are the heirs of Henry Page alone. It is very evident that the covenant was for themselves and their heirs respectively, and, Mrs. Page's covenant being void, that the heirs of Henry Page alone were the proper parties to be sued. If the construction contended for by the appellants should prevail, it must prevail as to all the parties named in and bound by the covenant; and yet it is manifest that there could not have been joint executors or administrators of Henry Page and wife. It was also contended that, as *assigns* were not named in the covenant, the suit could not be maintained in their name, but should have been instituted in the name of some party named in the covenant. All the authorities agree that covenants for title run with the land, enure to the protection of the owner, for the time being, of the estate which they are intended to assure, and that they may be enforced, not only by the covenantee and his representatives, but by his heirs, devisees and alienees. *Rawle on Covenants for Title,* 352, and authorities there cited. It was also contended that the *narr.* is defective because it does not allege that the title, under which the plaintiffs were evicted, was older and better than the title of the covenantor, or that it was in existence at the date and before the making of the covenant.

We think that this objection is well taken, and that the Court erred in not sustaining the demurrer. It is well settled that, in actions on covenant of warranty, it is necessary to

prove that the eviction of the plaintiff was had under a title paramount, and existing at the date of the covenant, and this being so, it is equally necessary that the *narr.* should so allege. The reason assigned for the necessity for such an averment is, that it will be contended that the title of the person evicting is derived from the plaintiff, unless such an averment is contained in the *narr. Wotton vs. Hele,* 2 *Wm. Saund.,* 181, *note; Stephens vs. Pattie,* 3 *Bibb,* 117; see also *Naglee vs. Ingersoll,* 7 *Barr,* 205; *Foster vs. Pierson,* 4 *Term Reps.,* 617; *Hodgson vs. East India Co.,* 8 *Term Reps.,* 278; *Folliard vs. Wallace,* 2 *Johns. Rep.,* 395; *Kelly vs. Dutch Church of Schenectady,* 2 *Hill* (*N. Y.*) *Reps.,* 111; 4 *Robinson's Prac.,* 33; *Webb vs. Alexander,* 7 *Wend.,* 286; *Fenwick vs. Forrest,* 5 *H. & J.,* 416.

The necessity for such an averment is even greater where there have been several intermediate conveyances, as in the latter case it would be intended, if the *narr.* did not aver that the title of the party evicting was older and better, and existing at the date of the covenant, that he had derived it from some one of the intermediate grantees. In such a case the title of the party evicting might well be older and better than that of the defendant in the ejectment, and yet not older and better than that of the covenantor, and if it was not older and better than the latter there would be no breach of the covenant.

What we have before said with respect to the vesting of the remainder, under the will of Mary Watson, in William E. S. Bradshaw, while an infant *en ventre sa mere,* disposes of the appellants' first and second prayers. They did not state the law correctly, and were properly rejected. There was no error in rejecting their fourth prayer. It was admitted in argument that the appellees had a right to abandon their appeal in the ejectment suit, without affecting thereby their right to maintain this action. This prayer is based upon the theory that there was evidence in the cause tending to prove that the appellants received a consideration for giving up

their appeal. Clement Sulivane was called by the appellants, and was the only witness examined as to this point, and he testified that there was no agreement or arrangement made by the parties to the ejectment suit in regard to the abandonment of the appeal, and that, for aught he knew, W. E. S. Bradshaw was not estopped from suing the appellees for *mesne* profits, nor the latter from prosecuting their appeal from the judgment in the ejectment. There being an entire absence of proof in this respect, the fourth prayer was for this reason, if for no other, properly rejected.

The second prayer of the appellees and the third of the appellants relate to the measure of damages. We have carefully examined the authorities referred to by the counsel of the respective parties, and many others upon this point, and are satisfied that neither of the prayers states the correct rule. The decided weight of authority is that the plaintiff in an action of covenant of title, is entitled to recover the consideration money named in the deed, with interest, and the costs in the ejectment suit, and where the suit is by the covenantee against the covenantor, the consideration in the covenantor's deed is the principal sum to be recovered. But where the suit is by the assignee of the covenantee then the measure of damages is, not the consideration mentioned in the covenantor's deed, (for if that were so there might in some cases be a recovery for much more than the assignee had paid for the property,) but the consideration, which the assignee has paid to his immediate grantor, with interest from the date of the eviction, and costs in the ejectment suit, with this limitation however that the recovery cannot be for an amount exceeding the consideration received by the covenantor for the same lands. See *Booker's Adm'r vs. Bell's Ex'rs,* 3 *Bibb,* 175; *Kelly vs. The Dutch Church of Schenectady,* 2 *Hill,* 116; *Bennett vs. Jenkins,* 13 *Johnson's Rep.,* 51; *Hanson vs. Buckner's Devisees,* 4 *Dana,* 253; *Wyman vs. Ballard,* 12 *Mass.,* 304; *Stewart vs. Drake,* 4 *Hals.,* 142; *Wilson vs. Forbes,* 2 *Dev.,* 39; 4 *Kent's Comm.,* 475, *marg.; Pitcher vs. Livingston,* 4

*Johns. Reps.*, 1. This rule is certainly the one best calculated to do justice between the parties, and is sanctioned by the weight of authority. There is some conflict in the cases as to the right to recover counsel fees paid in defending the ejectment. It is the duty of the covenantor and those bound by the covenant, upon receiving notice, to defend the covenantee's title, and upon their refusal or neglect to do so, it is clear that the latter would have the right to employ counsel for that purpose, and to recover, in an action on the covenant, such reasonable fees as they had been compelled to pay. But as the appellees did not give such notice, but voluntarily undertook to defend the title, they have no right to recover the counsel fees which they may have paid.

Had notice been given to the appellants they might have thought proper to defend the suit and employ their own counsel, or they might have come to the conclusion that the title of the plaintiff in the ejectment could not be successfully resisted, and they might therefore have determined not to incur a useless expense in making a defence, and preferred to perform their covenant by paying to the appellees the amount of damages to which they might be entitled.

The Court below therefore properly rejected the appellants' third prayer, but erred in granting the instruction asked by the appellees' second.

The first prayer of the appellees was also alleged to be defective, because it did not submit to the finding of the jury certain facts material to the plaintiffs' case, to wit: whether William E. S. Bradshaw was the son of Sally Bradshaw, or the time of his birth, or whether assets came from Henry Page to the appellants. And further, because the prayer put it to the jury to find whether the plaintiff in the ejectment recovered the land sued for, by virtue of an older and better title than that of Henry Page, instead of stating the facts and instructing the jury that if they should find such facts, they constituted an older and better title than that of said Page; thus submitting a question of law to the jury which it was

the province of the Court alone to pass upon. We do not deem it necessary to notice these objections, inasmuch as the case will be sent back for another trial, when any defects in the prayer, which are liable to objection in the Court below, may be easily corrected.

This prayer was also alleged to be erroneous, because it required the verdict, if in favor of the plaintiffs, to be rendered against the defendants *in solido.* The heirs of Henry Page stand in his place and are answerable for a breach of his covenant, if they have real assets from him by descent. In *Hoffar and Wife vs. Dement,* 5 *Gill,* 137, it was held ,that whatever be the number of co-parceners they all constitute but one heir, and that they are connected together by unity of interest and unity of title. The appellants therefore all constitute but one heir of Mr. Page, and are *jointly* liable, if liable at all, and the verdict ought to be against them *in solido.* Were it otherwise, there would be imposed upon the covenantees and their assigns in all cases, the very difficult, if not impossible task of ascertaining exactly what amount of assets had descended from the covenantor to each of his heirs. If either of the heirs should be compelled to pay, in satisfaction of a judgment against them, an amount greater than the assets which he took by descent, he would have a right to go into equity and compel contribution from his co-heirs.

As no point was made either in the brief or in the argument of the counsel of the appellants, in regard to the ruling of the Court below upon the demurrer to the seventh plea, we must presume that they acquiesce in that ruling. We are of opinion however that the demurrer was properly sustained, as the plea stated a mere conclusion of law. It was also properly sustained as to the eighth plea, which was interposed as a bar to the action because Henry Page and wife had both been dead twelve years before the suit was commenced. It is well settled that, in actions such as this, limitations do not begin to run until there is a breach of the covenant. *Rawle on Cov. for Title,* 596, 602, and the authorities there cited.

Crisfield, *et al. vs.* Storr.

The counsel of the appellants also contended that the appellees were bound to seek satisfaction of their claim out of the personal estate of Henry Page, before a recovery could be had against them as his heirs. We do not concur in this view. It might so happen that a covenantor might die and his personal estate be fully administered before any breach of the covenant, as was probably the case in this instance; so that it would be impossible to have satisfaction out of the personal assets, and yet, according to the views of the appellants, the *heirs* of the covenantor would not be responsible, though real assets had descended to them; and thus the party injured by the breach would be left without remedy. It was also claimed that the judgment in the ejectment case was not legally admissible as evidence against the appellants, because no notice of the pendency of that suit had been served upon them. As the record of that case was offered generally, and admitted without objection, we are not prepared to say that the whole record was not properly before the jury. But even if objection had been made, the record would have been clearly admissible for the purpose of proving the fact of the judgment. As the appellants had received no notice of the pendency of the ejectment, it was legally admissible for no other purpose. *Key vs. Dent, Adm'r of Wood*, 14 *Md.*, 98.

As the Court below erred in overruling the demurrer and in granting the appellees' second prayer, the judgment appealed from will be reversed and a new trial awarded.

*Judgment reversed and new trial awarded.*

(Decided 22d May, 1872.)