WILLIAM C. BROOKS *v.* CHARLES E. BLACK.

1. COVENANT OF WARRANTY. *Eviction. Measure of damages against remote vendor.*
   The measure of recovery by an evicted vendee upon the covenant of warranty of a remote vendor in the chain of title is not limited to the price paid by such vendee to his immediate vendor, but is determined by the value of the land at the time of its conveyance by such remote vendor, who made the warranty, and this value is conclusively fixed by the purchase price paid to him therefor.

2. SAME. *Interest recoverable when.*
   Interest on such purchase price is recoverable for such a time as the evicted vendee has been held liable to the real owner for the mesne profits.

3. SAME. *Costs. Attorney's fees.*
   In addition to the purchase price and interest, the taxed costs expended by such evicted vendee in defense of the ejectment suit may also be recovered, but not his attorney's fees and costs not taxed.

FROM the chancery court of Noxubee county.

HON. T. B. GRAHAM, Chancellor.

The opinion states the facts.

*George A. Evans,* for appellant.

Our contention is that the measure of damages between the vendee and a remote covenantor is the price paid by the former. As the appellee has been evicted only as to one-fourth of the land, he can only recover one-fourth of the sum paid by him therefor. The cases which declare the measure of recovery to be the value of the land at the time of the ouster, if there has been an advance in the value, are obsolete, having long ago been overruled. The true rule

is that the covenantee cannot recover from his grantor more than the covenantor received, nor more than the covenantee paid. Both are limits.

In the multitude of authorities using the language that the sum received is the measure, it will be found that they are cases where the suits were between immediate parties, and where the property has enhanced in value. All the authorities agree that the purpose of the law is to indemnify the loser. The ousted grantee can recover no more than was received by his grantor. That is the *limit*, because it is presumed that the grantor did not contemplate more; but he cannot recover that much unless it takes that much to indemnify him, or in other words to reimburse him for the whole sum he has paid.

We do not controvert the principle that covenants of warranty run with the land, and the evicted covenantee may sue his immediate vendor, or the first warrantor, or any one along the line; but this seems to be a conclusive reason why a remote vendee can only recover what he has paid; otherwise a remote vendee of land which has been sold many times, and each time for a much less price, may elect to skip over all of the warrantors and sue the first, recovering from him many times more than he paid for the land himself, and many times more than he could recover from his immediate vendor, and many times more than the first warrantor would be liable for if each vendee had in turn sued his immediate vendor, and many times as much as would be required to indemnify everybody. Such a rule would be an encouragement of champerty and maintenance. It is to offer to unprincipled parties a high premium to buy and deal in bad titles. Indeed a bad title might be more valuable to an unprincipled man than a good one, if at any time there had been a covenant by a solvent grantor and the property had depreciated in value.

The position contended for by us is settled as the law in this state. See *Dyer* v. *Britton,* 53 Miss. 278; *White* v. *Pressley,* 54 Ib. 314.

It was error to award Black his attorney's fees for defending the ejectment. It is not pretended that Brooks had any notice to

defend. *Pressfield* v. *Stow*, 36 Maryland, 151 ; 9 Rich. 380 ; 25 Ga. 566 ; 42 Tex. 418 ; 9 Lea, 455 ; 7 Cush. (Mass.) 166 ; 8 Kan. 276 ; 15 Iowa, 69 ; 68 Pa. 403.

*Brame & Alexander,* on the same side.

*Bogle & Bogle,* for appellee.

We think the question as to the measure of damages in a case like this has never been presented to this court before. *White* v. *Pressley,* 54 Miss. 313, is the nearest approach to it in our reports, and that does not pretend to decide the question, as in that case the vendee only claimed what he had paid for the land, and, this not being more than the vendor had received, the court said there was no error to the prejudice of the vendor. There is great conflict between the authorities on the subject, and we have not been able to find any court that lays down the rule contended for by appellants, that the measure of recovery is what the vendee paid for the land and no more. That would be allowing parties to speculate on their own wrong. Such a rule besides encouraging parties to speculate on their own wrong would be too uncertain and shifting. Where there have been various transfers at different prices, each particular transfer would be the basis of the measure of damages ; and, therefore, the several vendees could not with certainty rely on their warranties. If A. sell to B., and B. to C., and C. to D., who is evicted, and they should each severally sue their immediate vendor upon his warranty, what would be the measure of damages ? It must be certain, and the same in each case, and not speculative and shifting.

The chancellor correctly held that Black was entitled to recover what the land was worth at the time of eviction, not to exceed what Brooks received for it ; and we can conceive of no fairer rule so far as Brooks is concerned. Both parties are protected.

It is immaterial to the covenantor what his remote covenantee pays for the land. For a certain sum he warrants the title, and his liability is not governed by what the land thereafter may be sold for. The rule we contend for is sanctioned by the better autho-

rities.  *Dougherty* v. *Duvall*, 9 B. Monroe, 57 ; *Hunt* v. *Orwig*, 17 Ib. 73 ; *Dickson* v. *Desire*, 23 Mo. 151.

Attorneys' fees were properly allowed, notwithstanding no notice was given to the covenanter to defend the ejectment suit.  *Morris* v. *Rowan*, 17 N. J. L. 304 ; *Pitcher* v. *Livingston*, 4 John. 1 ; *Ryerson* v. *Chapman*, 66 Mo. 557 ; *Robertson* v. *Lemon*, 2 Bush, 301 ; *Cox* v. *Strade*, 2 Bibb, 273 ; *Pikin* v. *Levitt*, 13 Vt. 379 ; *Keeler* v. *Wood*, 30 Ib. 242 ; *Kennison* v. *Taylor*, 18 N. H. 220 ; *Love* v. *Ferg*, 31 Ohio St. 574 ; *Hardin* v. *Larkin*, 41 Ill. 413 ; *Taylor* v. *Hohter*, 1 Mont. 688.

COOPER, J., delivered the opinion of the court.

This is a proceeding by attachment in chancery by the appellee, Black, against his remote vendor, Brooks, to recover damages for the breach of warranty of title to certain lands.  In 1869 Brooks conveyed the land, with covenants of warranty, to one Spencer, the consideration being the sum of $6296.  Spencer executed a deed of trust, with power of sale, to one Smith, to secure the payment of a debt of $400 to Graham, Black & Co. In September, 1878, the debt secured being unpaid, the land was sold, as provided by the trust-deed, and at such sale Black, the appellee, became the purchaser, at the price of $1000.  After his purchase, Black conveyed to Mrs. Spencer an undivided one-half interest in the land.  Afterwards, the heirs-at-law of Mrs. Caroline Daves and Mrs. Neilson recovered in ejectment from Black and Mrs. Spencer the undivided one-half interest in the land, claiming under title paramount to that of Brooks.  Brooks was not notified of the pendency of this action of ejectment.  Black, by the result of that suit, having lost the one-half of his half interest in the land (the one-fourth of the whole), seeks by the present proceeding to recover from Brooks one-fourth of the consideration paid him by Spencer, and interest thereon, and the costs of defending the action of ejectment against the heirs of Daves and Neilson, including attorney's fees.  The chancellor found as facts that the title of the heirs of Mrs. Daves and Mrs. Neilson was paramount to that of Brooks ; that the value of the land at the

time of eviction was $6000; and that Black, in good faith, and in discharge of a legal duty, had defended the action of ejectment, and in so doing had expended in court costs the sum of $249.91, and the further sum of $200 for attorney's fees, which were reasonable. Upon these facts, he decreed that Brooks should pay to Black the sum of $1500, the same being the actual value of the land lost by Black, and less than one-fourth of the purchase price paid to Brooks by Spencer, with interest at six per cent. from January 1, 1888, the date of Black's eviction, and also the said sums of $249.91 and $200, the court costs and attorney's fees, with interest thereon from the commencement of this suit. Brooks appeals and assigns for error; (1) that the court should have not made any decree against him, because the facts proved show that the debt secured by the deed of trust from Spencer to Smith, trustee, had been paid at and before the sale under said deed; (2) that the measure of damages should be the one-fourth of the purchase price paid by Black, and not the one-fourth of the value of the land at the time of eviction, nor the one-fourth of purchase-money received by Brooks; (3) the court should not have allowed the court costs expended in defending the action of ejectment; (4) the court should not have allowed attorney's fee paid in defending said action.

It is sufficient to say, in reference to the first assignment of error, that the facts do not support appellant's contention.

The second assignment of error presents an interesting question which has never before been considered by this court, and, so far as our researches have led, has not often arisen in other states. That question is, what is the measure of damages, in a suit by an evicted vendee, upon the covenant of warranty of a remote vendor, running with land? May he recover the purchase price received by the remote vendor, or is he limited by the consideration he himself has paid? It is supposed by counsel for the appellant that the sum paid by the evicted party—the value of the land at the time of his purchase—is fixed as the measure of damages in this state by the case of *White* v. *Pressly,* 54 Miss. 313. But the question was not raised by the record in that case; and although Chalmers, J., in delivering the opinion of the court, declares that the sum paid by

the evicted party, with interest, the same being less than the sum received by the remote vendor, is a correct measure of damages, the declaration does not thereby become decision.    In that case, Huntington had sold land to one Jones, from whom the title had passed under execution sale to Pressly.    Pressly lost the land by reason of title paramount to that of Huntington, and sued Huntington's administrator on the covenants of warranty, and recovered in the court below the sum he had paid at execution sale, and interest thereon, the same being less than Huntington had received.    The administrator appealed.    He, as appellant, could not assign as error the fact that damages less than should have been awarded had been given; nor could the appellee raise the point here, that the judgment he sought to maintain should have been for a greater sum.    The observation of the judge was not upon any question sought to be raised, or which could have been decided, and therefore is not the decision of the court.

Among the first cases in which the liability of a vendor to his vendee for breach of the warranty for quiet possession was considered were *Staats* v. *Ten Eyck*, 3 Caines, 112, and *Pitcher* v. *Livingston*, 4 Johns. 1.    It was contended for the plaintiffs in these cases that the covenant was one of indemnity, and therefore that the measure of damages should be the value of the land at the time of the breach.    In *Staats* v. *Ten Eyck*, recovery was sought for the appreciation in the value of the land above the price paid by natural causes, and in *Pitcher* v. *Livingston*, to recover above the purchase price the value of permanent improvements put upon the land by the vendee.    The arguments for the plaintiffs were rested upon the rule of damages in breaches of personal covenants in other instances, but the court rejected the contention, and adopted, by analogy, the measure of damages applied in the common-law action of *warrantia chartæ*, and in suits for the breach of the covenant of seisin, viz., the value of the land, determinable by the price paid the vendor; and, since the vendee was liable to the real owner for mesne profits, he was also entitled to interest on the purchase-money for the time for which such mesne profits might be recovered against him. The measure of damages established in these cases has been so gene-

rally adopted in other states as to have become almost universal, and it would be superfluous to cite authorities in its support. It has been announced as the rule in this state. *Phipps* v. *Tarpley,* 31 Miss. 433. We refer to the cases above, not for the purpose of announcing the rule which applies as between vendor and vendee, for that is too well settled to admit of controversy, and is conceded by counsel for appellant; we note them to show that the suggestion now made that the covenant is one of indemnity was rejected by the court in the earliest cases. In a certain sense, all "covenants" are for indemnity; but the sense in which the word is now used, in argument of counsel, that redress is to be afforded to the extent, and within the limit, of the actual loss sustained by the vendee, in an action against his immediate vendor, it may be confidently asserted, is against the overwhelming current of authority. In these cases, at least, the decisions are practically uniform that, regardless of the value of the land at the time of eviction, the recovery is measured by the value of the land at the time of the conveyance, which value is conclusively fixed by the price paid by the vendee or received by the vendor. Another proposition may be confidently stated as supported by an equally uniform current of authority, that the covenant for quiet enjoyment runs with the land, and passes to all subsequent owners claiming in the chain of title. The purchaser of land gets, by operation of law, not only the land, but also the covenant of the first vendor, and that as well where the covenant is by its words to the vendee only, as where it is with him and his assigns. When we come however to the precise question now presented, which is whether a remote vendee may recover from the remote vendor the purchase-money paid by the first vendee or is limited to the amount paid by himself to his vendee, we find direct conflict in the decisions, and, so far as we have found the cases, they are nearly equal in number on each side. In North Carolina, *Williams* v. *Beeman,* 2 Dev. 483; Minnesota, *Moore* v. *Frankenfield,* 25 Minn. 540; Tennessee, *Mette* v. *Dow,* 9 Lea, 93; *Whitzman* v. *Hirsh,* 87 Tenn. 513; 11 S. W. Rep. 421; and Maryland, *Crisfield* v. *Storr,* 36 Md. 129, it is held that such remote vendee can only recover what he has paid to his own

vendor.   On the other hand, it is held in South Carolina, *Low-rance* v. *Robertson*, 10 S. C. 8 ; Iowa, *Mischke* v. *Baughn*, 52 Ib. 528 ; 3 N. W. Rep. 543 ; and Kentucky, *Dougherty* v. *Duvall*, 9 B. Mon. 57, that such vendee may recover the full consideration received by the defendant, the remote vendor.   *Williams* v. *Bee-man* was decided by a divided court, Ruffin, J., dissenting, and *Mette* v. *Dow* (followed by *Whitzman* v. *Hirsh*) overruled *Hopkins* v. *Lane*, 9 Yerg. 79.   In *Crisfield* v. *Storr*, 36 Md. 129, the court declares that it had carefully examined many authorities upon the point, and that the decided weight of authority was that the plain-tiff could not recover on the warranty of a remote vendor more than he had himself paid to his immediate vendor, and in support of this declaration cites the following cases : *Booker* v. *Bell's Ex'rs*, 3 Bibb, 175 ; *Kelly* v. *Dutch Church*, 2 Hill, 116 ; *Bennett* v. *Jenk-ins*, 13 Johns. 51 ; *Hanson* v. *Buckner*, 4 Dana, 253 ; *Wyman* v. *Ballard*, 12 Mass. 304 ; *Stewart* v. *Drake*, 9 N. J. Law, 142 ; *Wil-son* v. *Forbes*, 2 Dev. 39 ; *Pitcher* v. *Livingston*, 4 Johns. 1.   We have examined these cases, and find all of them, except *Kelly* v. *Dutch Church*, to be suits by the immediate vendee or his heirs-at-law against the immediate vendor or his personal representative. *Kelly* v. *Dutch Church* was a suit by the assignee of the lessee against the lessors of his assignor.   The trial court had awarded, as damages, the rent reserved in the lease ; thus, as it seems to us, making the sum paid to the lessors, and not that paid for the assign-ment, the measure of damages.   But the facts are not very clearly stated, and the case cannot be held to decide anything upon the point.   The question seems to have been more fully examined upon principle in the cases of *Williams* v. *Beeman*, 2 Dev. 483 ; *Mette* v. *Dow*, 9 Lea, 93, and *Lowrance* v. *Robertson*, 10 S. C. 8, than in any other.   In *Williams* v. *Beeman*, the majority of the court thought that the remote vendee was suing to recover his own damages, and not those of the first vendee, and therefore should be restricted to the actual damages he had sustained.   In *Mette* v. *Dow*, the court compared the covenant to a penal bond, the recovery on which would be limited to the actual damages sustained by the party suing.   The dissenting opinion of Ruffin, J., in *Williams*

v. *Beeman,* is, in our opinion, a complete reply to this position.   He says :   " The value at the time of the sale by the first vendor is the measure prescribed.   It ought to operate both ways.   If the vendor be not liable for more, he ought not to be for less.   I understand it to be admitted that, if his immediate vendee be evicted, he is still liable for that.   I do not see why he should not be equally so to the assignee as his vendee.   Does the assignment change his covenant ? It runs with the land, and he who buys the land buys the covenant. He gets the whole of it.   But it is said that the assignor in such case cannot recover from the first vendor more than the evicted vendee gave for the land, because this is all the assignor would be obliged to pay the assignee, and therefore he has complete indemnity.   This is changing the rule essentially.   It puts it upon the amount of the loss, not the price paid.   It would seem to me that whoever buys land with a covenant adhering to it takes it with all the advantages it conferred on his assignor.   It is so in personal contracts, for we do not inquire what the assignee of a bond gave for it.   The obligor must pay him the whole."   This argument seems to us unanswerable.   It at least never has been answered in any case we have seen.   When it is conceded that, by his covenant, a vendor binds himself to return the purchase price he receives in the contingency of a failure of the title conveyed, and that this obligation is assigned, by operation of law, to whoever may succeed to the title, it would seem to follow, as a corollary, that the recovery, by whomsoever had, ought to be equal to the obligation. But, under the rule announced in Maryland, Minnesota, Tennessee and North Carolina the obligation of the covenantor is variable, and dependent upon transactions with which he is not connected. In these states, a man selling an estate to A. for $5000 would be liable to pay A. that sum if he should be evicted.   But if A. sells the same land to B. for $500, the liability of the first vendor is reduced to that sum, and thus B., the purchaser from A., gets less than the obligation A. held.   But if B. sells to C. for $5000, the original obligation revives, and the absurdity is presented of B.'s failing to get, and therefore to have, what A. owned, and still transferring to C. that which he never had.   The rule announced in

Kentucky, Iowa and South Carolina is not only commended by its justice, and by analogy to other well-settled principles, but possesses the advantage of stability and uniformity. As we have said, it is quite generally held that, by the covenant for quiet enjoyment, the grantor binds himself to pay, in event of failure of title, the then value of the land, which value is determined by the price paid. Appreciation by natural causes, or by improvements put upon the property by the vendee, does not enlarge his liability; nor is it decreased by depreciation in value from any cause. By legal intendment the obligation is as though the covenantor should say to the covenantee: "You, or the person succeeding to the title I convey, shall hold the land, or if you cannot, by reason of title in another, the money I have received shall be restored in lieu of the land." We are unable to perceive any principle upon which this obligation shall be diminished because of the price, in consideration of which it may be assigned. We therefore conclude that the obligation of the covenantor is the same to the assignee that it was to the covenantee, and, being such, is governed by the same measure of damages.

The third and fourth assignments of error present the question whether taxed costs and attorney's fees in excess of the purchase price, and interest thereon, may be recovered on the covenant. We are unable to discover any just principle upon which costs, whether taxed or otherwise, have been allowed to plaintiffs over and above the purchase price received by the covenantor, and interest thereon. We readily perceive the justice of the rule by which the value of the land at the time of the sale by him is accepted as the measure of the liability of the covenantor, and also that the price paid shall be taken as conclusive evidence of that value. We also appreciate the fairness of allowing interest on the purchase-money as compensation to the covenantee for so long a time as he has been held liable to the owner for mesne profits. But why costs in excess of the purchase-money and interest have ever been allowed we cannot conjecture. In 4 Kent's Comm., p. 476, it is said: "The measure of damages on a total failure of title, even on the covenant of warranty, is the value of the land at the execution of the deed; and

the evidence of that value is the consideration money, with interest and costs." How costs, which are uncertain in amount, varying with reference to the character of the suit, the number of witnesses, and the nature of the issues presented in a proceeding, could ever have been supposed to furnish any light upon the past value of lands, passes our comprehension. But so it is that, by practically an unbroken current of authority, the rule has been established that they may be recovered in addition to the purchase price and interest. Rawle, Cov. ch. 9; Suth. Dam. 302; 4 Am. & Eng. Enc. Law, 566. Believing that the rule allowing any costs should never have been established, we decline to extend it beyond the limits of the taxed costs of the case. Attorney's fees have been allowed in some states, and disallowed in others. The conflict in these decisions will be found in the cases cited by the text-writers, and the encyclopedia, above referred to. Constrained by authority to allow the taxed costs, we return to correct principles at the first point at which we may do so, and hold that the attorney's fees paid by the covenantee are not recoverable on the covenant of the grantor. In this cause the court allowed the defendant an attorney's fee, which, added to the taxed costs and other damages, exceeded the value of the land at the time of the sale, and interest thereon, and taxed costs. But, since the court also erred in fixing the value of the land at $6000, its value at the time of eviction, instead of $6296, the price paid to the defendant, both errors must be corrected to make a proper result.

*The decree is reversed, and decree here.*