MABEL VIRGINIA ROBLEY ET AL. v. STERLING A. WITHERS
ET AL.

[51 South. 719.]

1. FRAUDULENT CONVEYANCES. *Evidence. Creditor accepting notes se-
cured by conveyance assailed.*

A sale of lands will not be held to have been fraudulent upon evi-
dence tending to show a previously existing purpose on the part
of the grantor to put the property beyond the reach of his cred-
itors, where the sale was for full value and the notes given for
the purchase money, secured by a deed of trust on the land, were
promptly transferred to and accepted by the complaining creditor
of the grantor as security for his debt.

2. DEEDS. *Subsequent conveyances. Mortgages. Priority of record.*

The title of a grantee in a conveyance duly recorded is not affected
by the grantor's subsequent trust deed on the land executed with-
out his knowledge or acquiescence.

FROM the chancery court of Tunica county.

HON. PERCY BELL, Chancellor.

Mrs. Robley and others, appellants, were complainants in the
court below; Withers and others, appellees, were defendants
there. From a decree in defendants' favor complainants ap-
pealed to the supreme court. The conflicting views of the
counsel for the parties as to the facts shown by the record are
disclosed in their briefs. The facts as ascertained by the court
are set out in its opinion.

*Calvin Perkins* and *McWillie & Thompson,* for appellants.

This case illustrates the extreme hazard to which the widowed
and fatherless are exposed when gracious and well meaning
financiers decide that it is best to relieve them of the burdens of
ownership.

The appellees rely on a claim of fraud that is unsupported by

proof, but, apart from the lack of evidence, it is enough to make the marble lips of Themis curl in derision to find that the creditor who complains of the conveyance from Miller to Robley and the latter's deed of trust back to secure the purchase money notes is the identical concern that took those notes as security for its existing indebtedness and afterwards foreclosing the trust deed became the purchaser under the same.

The appellees in desperation at the absence of any evidence of fraud insist that the recital in the deed from Miller to Robley of the cash payment of $2,700 is false and that nothing of value passed between the parties at the time. As to this we submit that it is well settled that this recital of payment is *prima facie* true, and that there is no sufficient showing to overcome it. *Hiller v. Jones,* 66 Miss. 636.

The testimony of Norfleet, the Memphis supply merchant with whom Robley did business, is relied on as showing nonpayment of the $2,700 so clearly as to overcome the *prima facie* effect of the recital, but as the court will see the testimony of the witness is not of that character. All that he knew is that Robley, a man of "moderate means," did not have the money with his firm and did not get it from them; but his statement was manifestly an inference and not based on positive or personal knowledge. It is perhaps true that supply merchants endeavor to get acquainted, closely acquainted, with all the money that their customers have, but they are not always successful in the effort, and planters sometimes have a few thousands that the merchants know nothing about. Nothing is more common than for persons to manifest financial resources unknown to their nearest neighbors, much less those who like Norfleet live in another state, and the lack of such resources is often equally surprising.

There is not an intimation in the record of any design on Robley's part to defraud any one. On the contrary it does not appear that he knew Miller owed anybody except the Memphis Trust Company, which held a prior mortgage on the property;

and it was expressly agreed that Robley's purchase money notes secured by his trust deed should be so used as to protect the Memphis Trust Company, the lien of whose prior mortgage was fully recognized and, as a part of the transaction, was to be made the subject of a release when the Trust Company should receive the Robley notes. No one has ever complained of fraud in the transaction except the Trust Company and surely it had no right to make that complaint.

The argument made to support the second sale of the property, that made under the trust deed in favor of the First National Bank, is not less unsound than singular. It will be recalled that the Memphis Trust Company had accepted the Robley notes though it afterwards refused to release its prior mortgage to secure the notes made by Polk and others, but it was fearful of loss by reason of the inauguration of a proceeding in bankruptcy within four months of the time its security took effect, and therefore concerned itself to get the First National Bank to advance Miller enough money on a second mortgage to pay off the small creditors who it apprehended might proceed in the bankrupt court. This was accomplished through the active agency of the Memphis Trust Company itself, all the money realized by it was applied to the payment of Miller's debts, and yet it constitutes the subsequent fraud on Miller's part that is claimed to have invalidated his transaction with Robley because he then had it in contemplation. The Memphis Trust Company may be an adept in the art of using others and juggling with the interests of others to serve its own purposes, but it cannot mislead the clear-eyed intelligence of this court with such a bald proposition. Moreover, there is not a word of testimony going to show that Robley knew that any negotiation had been started by the Memphis Trust Company the object of which was to raise enough money on a second mortgage by Miller to protect its (the Trust Company's) security by paying off those creditors who might put Miller in bankruptcy. Indeed, there is nothing to show that Miller knew that anything would

ever come of the negotiation which depended on the action of the Trust Company, and, to render the whole matter doubly absurd, it is shown by the record that the First National Bank was only ostensibly the creditor making the subsequent advance, the Trust Company, which was simply using it for the sake of appearances on a gilt-edged contract of indemnity, being the real creditor.

The position then of the Trust Company is this: The sale under the second deed of trust in favor of the First National Bank is valid because the sale made by the Trust Company under the Robley trust deed at which it purchased the property is void, and the sale under the Robley trust deed is void because that trust deed was part of a transaction especially contrived to defraud the First National Bank when it should thereafter become a creditor of Miller. In other words, the Trust Company has the assurance to contend that an earlier incumbrance, *the benefits of which it was intended to have and did in fact accept and have as a creditor* is void because of the contemplated fraud in the making of a later incumbrance *which was part of a scheme contrived and consummated by it for its own benefit to defeat the loss of its security by bankruptcy proceedings, the avails of which actually went to pay other debts of Miller, the grantor.* Not even its remarkable experience in handling other people shown by the record herein quite justifies the Trust Company in thus affronting the intelligence of the court and counsel for appellants.

The appellees very inconsistently declare that the sale under the First National Bank's deed of trust given after Miller ceased to be owner was valid because the sale under the earlier Robley trust deed was invalid by reason of the fraud contemplated against the First National Bank when it was given, and then strenuously contend for the validity of the sale under the Robley deed of trust. In other words the Robley trust deed was both valid and void for fraud, and a valid sale can be had under the trust deed of a grantor who was without title. The

real state of the case is very plain, if the appellees would not shut their eyes to it. The sale under the Robley trust deed would have been valid but for the improprieties complained of, but the sale under the First National Bank's trust deed could in no case have any vitality for the reason that Miller, the grantor therein, had conveyed the property to Robley by deed duly recorded before said trust deed was given.

While by no means necessary to our argument we insist that there being a total absence of evidence of knowledge in Robley of any intention on Miller's part to contract a subsequent debt to the First National Bank, it is immaterial what Miller intended when he conveyed to Robley, who was a purchaser for value. We have a right to say that he paid $2,700 in cash when he bought the land. His deed so recites and that recital is *prima facie* true. The testimony of Norfleet on this subject amounts to nothing more than that if Robley paid the money he did not get it from his firm and he did not know where he got it, nor did he think that he had that much money. This testimony is altogether too weak to change Robley's attitude under his deed as that of a purchaser for value.

The appellees are confronted by a peculiar dilema. If it be true that Robley immediately after concluding the transaction with Miller went about telling people that it was only a sham, it would be against all human experience to believe that there was a secret fraud involved in it, and this testimony which should be cleared away in order to lay the foundation for a charge of fraud is all that is relied on to prove it.

As stated in our original brief this is not a case of estoppel as where one denies having any claim and thus misleads a purchaser at a judicial sale and Robley did not talk himself out of his title. It is entirely immaterial what Robley told those who were inquiring into his private affairs. Different people treat such inquiries in different ways. Some simply remain silent or refuse to answer, while others, who are by no means very bad people, intentionally mislead the inquirer as to matters of which he has no right to be informed, proceeding on the adage of "Ask

me no questions and I'll tell you no lies." We are entitled to say on the record that Robley parted with $2,700 in cash when he purchased the property, but whether he did or not, it is clear that all the parties affected by it treated the transaction as a valid and binding one. Miller, who turned the Robley notes over to the Trust Company, certainly did, the Trust Company which held on to the notes, had the deed of trust securing them placed of record, and finally had a sale made and became the purchaser under the deed of trust, certainly did, and Robley, who persistently tried to get the prior mortgage released and as owner just before his death tried to sell the property, most certainly did.

As to whether or not Withers was a *bona fide* purchaser. He did not buy at the sale, but the Memphis Trust Company became the purchaser with a cut and dried arrangement to transfer to Withers for a given sum. The sale was for cash and Withers doubtless did not have in cash the whole amount necessary to buy at the sale, but he could very likely have arranged with some capitalist to advance the necessary sum, giving him time to repay with a rate of interest that would operate as an inducement. It is evident that the property was an adequate security for twice as much as it brought at the sale, if not more.

Withers' attitude is sought to be affected by the proposition that Robley's trust deed from Miller should have contained a reference to the mortgage arising out of the conveyance to Polk and others which is certainly a novel proposition in that it shifts to a subsequent purchaser the duty of making the records show a prior mortgage of the same property, but is even more striking when we observe that Withers knew of the existence of the prior mortgage before the sale under the trust deed as shown by his agreement with the Trust Company made before the sale referring to existing "mortgages."

*Tim E. Cooper,* for appellee.

The court will bear in mind that in this litigation, the rights only of the heirs at law of Robley are involved. The court

has no concern now with what might have been the rights of Austin Miller, if he had instituted a suit seeking to recover the property.

It is necessary, in the examination of the case, to keep in mind the fact that in many of the questions, the influence and effect of our registry acts are involved, which modify to a great extent the common-law rule, which would otherwise apply.

So far as the Memphis Trust Company is concerned, it may be conceded that it had notice of all the facts which a completed registration would have shown.. But different principles apply when we come to consider the rights of the present owner of the land, Stirling A. Withers, and the rights of Sledge and Norfleet, who claim as mortgagees under him.

As to all the parties, however, there is one defense common to all and this defense is presented in two aspects. That defense is, that the conveyance from Miller to Robley was a mere sham, intended to defraud his existing and future creditors.

The conveyance from Miller to Robley was a mere pretense, a fraudulent conveyance entered into for the express and declared purpose of putting the property in such shape as would save it to Miller.

If it be true, as all the evidence in the case shows, that the arrangement between Robley and Miller was a fraudulent arrangement, it is confidently submitted that the appellants are not entitled to any relief, and this, upon two grounds:

*First.* Because they come into a court of equity invoking its aid to enforce a fraudulent transaction.

*Second.* Because, under other facts disclosed in the record, the title derived under the deed of trust executed in favor of the First National Bank, was a good title.

Confining myself just now, to the first proposition, I call the attention of the court to the fact that the complainants do not stand upon an executed contract disclosed by the face of the papers only. Something additional must be claimed outside of the conveyance by Miller to Robley and of the deed of trust

executed by Robley to Miller. If the complainants stood alone upon these two papers, asserting their legality, they would have no standing in the court, because it would appear that Robley had bought the land and had given the deed of trust to secure the purchase money and had failed to pay the purchase money and that the property had been legally sold under the provisions of the deed of trust.

In considering the proposition now under investigation it will be remembered that the complainants are repelled,—if at all,— because of their own iniquity and not because of the independent or superior rights of the defendant.

The complainants could no more get the aid of a court of equity as against a co-conspirator, than they could against one innocent of all wrong. It is the weakness of their own case,— weak because fraudulent,—which closes the door of a court of equity to any relief.

When I come to my second proposition, another factor will be for consideration, to-wit, the strength of the independent equity or right of defendants.

Complainants invoke, in aid of their deed, a contemporaneous collateral agreement which, it is claimed, Miller made, by which he agreed to substitute the Robley notes for the Polk, Hill and Turley notes and get a release of the title conveyed by Miller to those gentlemen. This was a part of the fraudulent contract and the complainants must rely, not only upon the deed which was made to Robley, but in aid of it, must have the enforcement or the benefit of this collateral oral agreement, which they now claim was made.

In other words, they ask the court, in effect, to specifically enforce this fraudulent contract.

Now, if anything is well settled in law, it is, that where the complainant must rely upon the fraudulent contract in order to secure relief, he will be repelled by the court. Where the contract is fully executed and the conveyance is made and the complainant's situation is such that he may get along by introdu-

cing only the deed itself, this rule does not apply, for the com-
plainant, in such case, does not rely upon the contract, but on
the conveyance itself by which the title is passed to him.

But it is confidently submitted to the court, that no case can
be found in which a complainant, in a court of equity, has
been afforded relief where he has been forced to invoke the aid
of the court to enforce the fraudulent contract itself through
which he claims.

Now, if the court will read the bill, it will see how distinctly
and clearly the complainants rely upon an unexecuted part of
the agreement between Robley and Miller. The complainant
avers that at the time Miller conveyed the land to Robley, he
informed Robley of the Polk, Hill and Turley deed and agreed
that he would deliver the six promissory notes to the Memphis
Trust Company, to be held by it, in lieu of the Polk, Hill and
Turley notes, and that Polk, Hill and Turley would, and
should, by the direction of the Memphis Trust Company, quit-
claim the land to Miller. And that the said Memphis Trust
Company would, as holder of the said notes of Polk, Hill and
Turley, release and discharge its lien on the land securing these
notes.

And the bill further avers that contemporaneously with the
execution of the deed from Miller to Robley, a quitclaim deed
was prepared and a release and discharge of the vendor's lien
securing the Polk, Hill and Turley notes, and were delivered to
the said Austin Miller to the end that he might secure their exe-
cution. And the bill distinctly avers that Robley "made the
aforesaid contract with Miller whereby said land was conveyed
to him by the said Miller, relying upn the promise of Austin
Miller to obtain the execution of the aforesaid quitclaim and
releases respectively by the proper parties."

The burden of complaint against the Memphis Trust Com-
pany is, that it had notice of this collateral agreement between
Miller and Robley; an agreement that was a part and parcel of
the fraudulent scheme between Miller and Robley; that the quit-

claim deed which was prepared at the time Miller made the conveyance to Robley and which was intended to be executed by Polk, Hill and Turley and the release of the lien held by the Memphis Trust Company under the Polk, Hill and Turley conveyance, were presented by Miller to the officers of the company and the officers refused to have the papers executed, but, nevertheless, took an assignment of the Robley notes and as holder of said notes, had the deed of trust which secured them, foreclosed. It is thus made manifest by statements of their own case, that they are seeking the specific performance of a material part of a fraudulent contract made between Miller and Robley.

If this unexecuted agreement is not specifically enforced, it is manifest that complainants are not entitled to relief. The fair test is, to strike all these averments from the pleadings, and all the evidence relating thereto, and consider whether or not on the remaining averments of the bill, any relief could be afforded. With this agreement stricken out, all that would appear would be a sale and conveyance by Miller to Robley; and a contemporaneus deed of trust executed by Robley to secure the note, and a forfeiture of the deed of trust, the assignment of the notes by Miller to the Memphis Trust Company, the appointment of a substituted trustee, a sale under the deed of trust, and purchase by the Memphis Trust Company, with an agreement on its part, fully carried out, that it would not probate the notes as a debt against the general estate of Robley.

Certainly, upon these facts, the complainants,—the appellants here,—would not be entitled to relief, even as against the Memphis Trust Company, if the rights of Withers as a purchaser from that company were disregarded.

The maxims that "He who comes into equity must come with clean hands," and "That no right of action can arise from a fraudulent contract," are dealt with so exhaustively by Mr. Pomeroy in his work on Equity Jurisprudence, that I feel I need do nothing more than cite his work, and the authorities on

which he relies.   Pomeroy's Equity, vol. 1, §§ 397–404; Pomeroy's Equity, vol. II, §§ 939 *et seq.*

My second proposition on this branch of the case is, that the title derived under the deed of trust executed in favor of the First National Bank and a sale thereunder, was a valid title.

It is to be noted just here, that although by their amended answer the defendants set up this title, there was no amendment to the bill by which cancellation thereof was prayed.

Assuming that the evidence in the cause will satisfy the court that the transaction between Robley and Miller was fraudulent, it is submitted that it clearly shows not only a purpose on the part of Miller to defraud pre-existing creditors, but also a purpose to defraud the First National Bank with which he was then negotiating and from which he secured a loan of $12,000 upon a deed of trust executed on the plantation which he had conveyed a few days before, to Robley.

The facts diclose clearly the purpose of Miller, not only to protect the property against pre-existing creditors, but also to borrow money on it under the negotiations which were pending when he made the conveyance to Robley.

I, of course, recognize the rule in Mississippi, that a conveyance may be made for the fraudulent purpose of defeating only pre-existing creditors, and that subsequent creditors cannot complain nor annul such securities simply because it was made to defeat existing creditors.   But if the conveyance is made for the purpose also of defrauding *future* creditors, it is equally void as to them.

Our statute against fraudulent conveyances provides that the nullity declared "shall not extend to creditors whose debts were contracted after such fraudulent act, *unless made with the intent to defraud them.*"   But, if it was Miller's intent to defraud subsequent creditors, the prior conveyance to Robley was, by reason of his fraudulent purpose, rendered void, for Robley himself was not a purchaser for value.   *Richards v. Vaccaro,* 67 Miss. 516; *Otl v. Smith,* 68 Miss. 773.

The fact that the conveyance from Miller to Robley was recorded immediately after its execution and was constructive notice of its existence, is of no influence. It distinctly appears that neither the First National Bank nor the Memphis Trust Company had actual notice of that conveyance. *Wynne v. Mason,* 72 Miss. 424; *Statlen v. Bryant,* 55 Miss. 261; *Murphy v. Jackson,* 69 Miss. 403.

My third proposition is, that the sale under the Robley deed of trust was, in any event, a valid one.

The property at that sale, it is true, was bid off at the sum of $15,000, but, under the agreement between the administrator of Robley and the Memphis Trust Company, it was, in effect, a purchase at an amount equal to the Robley notes and interest, $30,000.

The court, we are sure, cannot read the record without reaching the conclusion that if the agreement between Robley and Miller had been a valid one, no harm was done to the heirs of Robley by the sale under the deed of trust. The attorney of the Memphis Trust Company gave notice of the fact that, although there were prior encumbrances, the purchaser at such sale would get a complete title. The widow of Robley was at the sale and bidding on parts of the property. Her attorney had seen the record of the Polk, Hill and Turley deed and asked the question whether the title would be free of that conveyance, and it was publicly stated, as he testifies, that it would be free of all encumbrances.

It is suggested by counsel, that this was not sufficient, because it is said that persons who might have thought of buying the property would probably have examined the record, and, seeing the clouded condition of the title, would not have appeared as bidders. But it is to be noted that the title when Robley executed the deed of trust was in exactly the same shape that it was when the sale was made. He had actual notice of it and gave his notes and the deed of trust stipulating therein that if the notes were not paid, the property might be brought to sale.

But, in addition to this, certainly it cannot be assumed that any prospective purchaser, however clear the title might have been, would have appeared at the sale and bid more than the value of the property.

Our fourth proposition is, that Withers, one of the appellees, is a *bona-fide* purchaser of this property from the Memphis Trust Company, as against whom this court will, on .this record, refuse to intervene.

There is no shadow of testimony tending to prove that Withers had either knowledge or notice of any of the matters put forward by the appellants as a ground for relief. It was sought to affect him by the averments in the pleading that Norfleet, who aided him in making the purchase and whose firm became surety for him on the contract for the purchase, was a stockholder and director in the Memphis Trust Company, the effort being to impute to Withers notice of any fact known to Norfleet because he was a director in the Memphis Trust Company and to impute to Norfleet notice of all the transactions of which the Memphis Trust Company had knowledge because he, it was said, was a stockholder and director in that company.

But the testimony of Norfleet distinctly shows that at the time of this transaction, he was not even a stockholder in the Memphis Trust Company. He has since become the owner of some of the stock, but is not now and never has been either a director or an officer.

Withers testifies that he knew nothing in the world about the title; never made any examination in reference to it and never heard of the matters set forth in the bill until this suit was brought.

To recapitulate our propositions, we submit: *First:* That under the Robley sale, the property in effect brought more than its value; that under the agreement between the Memphis Trust Company and the administratrix of Robley, the Trust Company had, in fact, agreed to bid the full amount of the Robley debt by contracting not to probate the note against the general

estate and that this was far more than witness gives as the value of the property.

*Second:* That if appellants stand upon the naked record of the conveyances of Miller to Robley and from Robley to Miller, without reference to any executory agreement between them, there is no irregularity even appearing in that sale. And that it being abundantly established that the conveyance from Miller to Robley was made for a fraudulent purpose, the heirs of Robley cannot have relief, which is dependent upon an unexecuted collateral agreement, a part of the fraudulent arrangement. But, without regard to the rights of any of the parties defendant, the complainants would be repelled from a court of equity.

*Third:* That the conveyance from Robley to Miller was made, not only for the purpose of defrauding the prior creditors, but also for the purpose of defrauding the First National Bank, with which Miller was then negotiating to raise money on a mortgage of this very property, which negotiations were consummated a very few days after the deed to Robley. And that the Memphis Trust Company, having become the purchaser under the trustee's sale made under the deed of trust, executed to the First National Bank, acquired a valid title to the property, regardless of the sale under the Robley deed of trust.

*Fourth:* That the defendant Withers, the present owner of the property, is a *bona fide* purchaser without notice and will not be disturbed by a court of equity on the facts of this record.

SMITH, J., delivered the opinion of the court.

On October 31, 1899, Austin Miller, who was the then owner of the land in controversy, being indebted to the Memphis Trust Company in an amount in excess of $25,000, and desiring to secure the payment of same, executed and delivered to O. B. Polk, Jerome Hill, and T. B. Turley a deed to said land for the consideration of $25,000, evidenced by their two promissory notes, of $12,500 each, payable at one and two years from date, respectively. It was understood and agreed that these notes

were to be indorsed and delivered to the Memphis Trust Company, and they were accordingly so indorsed and delivered. By a separate agreement the grantees in this deed agreed to reconvey the property to Miller upon the payment by him of the sum of $25,000 within two years. This arrangement, although in this form, was understood by all parties to be a mortgage securing the sum of $25,000 to the Memphis Trust Company. At the time of this conveyance this property was occupied by W. Q. Robley, who had leased same from Miller. On January 15th Miller sold and conveyed same to said Robley for the sum of $32,700, of which $2,700 was alleged to have been paid in cash and the balance was evidenced by Robley's six notes, for $5,000 each, due one, two, three, four, five, and six years after date, respectively. Miller, at the time of conveying to Robley, acquainted him with the facts attending his conveyance to Polk and others, and promised to secure a quitclaim deed from them, and to substitute Robley's six $5,000 notes held by the Memphis Trust Company. This deed was recorded on January 17, 1900. Robley thereupon executed a deed of trust conveying said land to Calvin Perkins, trustee, to secure the payment of the notes and this deed of trust, and the notes thereby secured were by Miller delivered to the Memphis Trust Company, and this company afterward placed this deed of trust on record. As other creditors of Miller were pressing him, and fearing that bankruptcy proceedings would be instituted, thereby endangering its security, Miller, at the suggestion of the Memphis Trust Company, borrowed from the First National Bank of Memphis the sum of $12,000, attempting to secure the same by a deed of trust on the land in controversy. This deed of trust was executed on the 27th day of January, 1900, and duly recorded. Robley had no notice of the execution of this deed of trust, or that Miller had borrowed this money from the bank. The payment of this debt was also guaranteed to the First National Bank by the Memphis Trust Company. Nine thousand dollars of this money was used in the payment of debts due by Miller

to various parties, and the remaining $3,000 was paid to the First National Bank, and by it credited on Miller's note, which note was afterwards purchased from the bank by the Memphis Trust Company. On August 3, 1900, Polk and others, to whom Miller had conveyed the land, executed a deed conveying the same to John T. Fargason and John H. Watkins. This deed recited that the lands were held by the grantors to secure the $25,000 debt of the Memphis Trust Company evidenced by the two notes of $12,500 each, and conveyed the lands to Fargason and Watkins as trustees, to be by them held, conveyed, and disposed of as the trust company might direct. This conveyance was not recorded until June 3, 1903, nearly three years after its date, and after the foreclosure of the Miller deed of trust as hereinafter set out. Fargason was president and Watkins vice president and general manager of the Memphis Trust Company.

Miller having failed to obtain the quitclaim deed from Polk and others, Robley several times endeavored to obtain from the Memphis Trust Company either this quitclaim deed or the return of his notes from the Memphis Trust Company, which knew of his agreement with Miller. The trust company declined to do either, stating, through its attorney, that it had not yet decided what course it would pursue in the matter. In November, 1900, just prior to his death, Robley put the property in the hands of a real estate agent for sale, but no sale was effected. Later in the same month, November, 1900, Robley died in possession of the land, leaving in addition thereto a small personal estate. During the course of the administration of Robley's estate, the attorney representing Mrs. Mabel Virginia Robley, his administratrix, stated to the Memphis Trust Company that if any attempt was made to collect these notes their payment would be resisted, and thereupon the company agreed to, and did not, probate said notes. After the death of Robley the trust company rented the land to S. A. Withers, one of the appellees herein. Calvin Perkins, the original trustee in the Robley deed

of trust, having declined to act, J. C. Adams, an employe of the Memphis Trust Company, was by this company appointed as substituted trustee, who, at the request of said company, advertised the land for sale on November 30, 1901, under said trust deed. On the 4th day of November this company agreed in writing with appellee Withers that, if it became the purchaser of this land at the foreclosure sale, it would convey same to Withers at and for the sum of $27,500, $2,500 to be in cash, and the remainder to be paid in annual installments of $2,500 each, each installment to bear interest at the rate of 6 per cent. per annum. At the sale the trust company became the purchaser thereof, at and for the sum of $15,000, and thereafter executed a deed to Withers pursuant to its said contract. At this sale the attorney for the Memphis Trust Company caused the trustee "to give notice that the title made under the sale then being made would be free of any prior claims of the Memphis Trust Company." After the sale by Adams, under the Robley deed of trust, the Memphis Trust Company caused the land to be sold under the deed of trust given by Robley to the First National Bank, and it (the trust company) became the purchaser of the land. On April 18, 1905, a bill was filed in the court below by appellants, the heirs of W. Q. Robley, deceased, against the appellees, seeking the cancellation of the deed from J. C. Adams, trustee, and an accounting. From a decree dismissing this bill this appeal is taken.

It is sought to uphold the decree of the chancellor on four grounds: First, because the deed from Miller to Robley was a part of a fraudulent scheme entered into between Miller and Robley to hinder, delay, and defraud the creditors of Miller, and a court of equity will not aid in the enforcement of a fraudulent transaction; second, because the title derived under the deed of trust executed in favor of the First National Bank and the sale thereunder was a valid title; third, because the sale under the Robley deed of trust was in any event a valid one; fourth, because Withers, one of the appellees, is a *bona fide* pur-

chaser of this property from the Memphis Trust Company, as against whom this court will, on this record, refuse to intervene.

There is no evidence which could be said to amount to proof that Robley's purchase from Miller was not made in good faith. The evidence relied on to show the contrary is that, prior to the sale by Miller to Robley, Miller requested one Kyle to permit him to convey the land to him (Kyle) in order to save it for his (Miller's) wife, and that he (Kyle) would not have to pay for it; that Kyle suggested to Miller that he see Robley, who would probably help him out of his trouble. All of this was unknown, or rather not shown to be known, to Robley. After the purchase by Robley, Mr. Norfleet, Robley's commission merchant, asked him about the matter, and he (Robley) told him (Norfleet) not to worry about it; that he had not bought the place, but that he had given the notes to help him (Miller) out of his financial difficulties, and that at the time of the purchase Robley had no money with Norfleet with which to pay the $2,500 recited in the deed to have been paid, and that Norfleet did not know of Robley's having any money at the time with which to have made this payment; that Robley was a man of moderate means, and was at the time indebted to Norfleet's firm. This evidence falls far short of proof.

As Robley's purchase antedated the deed of trust to the First National Bank, and as he knew nothing of it, and did not participate in any of the transactions leading up to its execution, his title was not affected thereby. The Memphis Trust Company having by its conduct ratified the agreement made by Miller with Robley, it became its duty to comply therewith. Its failure to do so, and the foreclosure of the deed of trust, under the circumstances, regardless of intent, could have but one result, and that was that the trust company would become the purchaser at practically its own price. This being true, it is useless to speculate upon whether the property would have brought more or less than the amount secured by the deed of trust, had this agreement been complied with.

The announcement at the sale, "that the title made under the sale then being made would be free of any prior claims of the Memphis Trust Company," could not have changed this result. We cannot say that prospective bidders would be satisfied to act on this promise. And, moreover, it did not appear from the recorded deeds, of which all parties are presumed to have notice, that the trust company was in position to carry out this promise. In addition, any person examining the title prior to the sale, with the view of purchasing the property, would necessarily have arrived at the conclusion that no title would be obtained by the purchaser at the sale, and that consequently it would be useless to appear at the sale for the purpose of bidding on the land.

But it is said that appellee Withers is a *bona fide* purchaser without notice. It is clear, however, from the evidence, particularly the recitals in the written contract between him and the trust company, and the statements made to him by Mrs. Robley, that Withers, at the time of his purchase, either had full knowledge of the true situation, or was in possession of such information and warning as charged him with the duty of investigating the matter, and the slightest investigation would have enabled him to have acquired full knolwedge.

The decree of the court below is *reversed,* and the cause *remanded.*

MAYES, J., dissenting. I do not know that anything could be gained by a rehearsal of the facts of this case in this dissent. I deem it sufficient to say that I do not concur with the majority of the court either in their conclusions of fact or law.