STERLING A. WITHERS v. BANK OF COMMERCE & TRUST
COMPANY.

[61 South. 690.]

1. COVENANTS. *Breach of warranty. Liability. Mortgages. Fore-
closures. Grantees of purchaser. Equity. Cross-bill.*

A grantor, upon the total breach of covenant of warranty con-
tained in a conveyance of land, is liable to the grantee only
for the amount of the purchase money received by him, with
interest thereon for so long a time as the grantee has been
compelled to account to the true owner for rents and profits,
together with costs of suit incurred, in defending against the
efforts of the true owner to recover possession of the land
conveyed.

2. SAME.

Interest on the purchase money paid by the grantee, and the
mesne profits of the land while in his hands, are considered
by the law as the equivalents of each other, and where an
accounting for mesne profits has not been required the interest
cannot be recovered.

3. COVENANTS. *Total breach of warranty. Liability.*

Where there is a total breach of the grantor's covenant of war-
ranty and the grantee has been compelled to purchase an out-
standing title to the land, he can recover from his grantor
the money necessarily expended by him for that purpose, or
he can set it off against whatever amount he may still owe
the grantor for the land.

4. MORTGAGES. *Foreclosures. Grantees of purchaser. Breach of war-
ranty. Liability. Rents. Interest.*

Where the assignee of a trust deed and the notes secured thereby
given for the purchase money of land, foreclosed the trust
deed and bought the property at the sale and then sold the
land to a third party with covenants of warranty, who went
into possession, and the heirs of the grantor in the deed of
trust filed a bill attacking the validity of the trustee's sale,
making the assignee and the third party parties, and the court
having decided that the trustee's sale was void, the third
person purchased the title of the heirs for a price arrived
at by taking the amount which the third person would have to

pay the heirs for rent during his possession of the land, and deducting therefrom the interest which the heirs would have had to pay the assignees on the debt, such third person could not recover of the assignee the amount thus paid to the heirs, but must lose the excess of the rent he has paid over the interest.

5. COVENANTS OF WARRANTY. *Attorney fees.*

Attorney's fees paid by the covenantee in defending his title are not recoverable on the covenant of warranty of the grantor.

6. EQUITY. *Crossbill. Necessity.*

The question of court cost incurred by the purchaser in defending his title under a covenant of warranty can be adjusted by the court on final hearing without a cross-bill.

APPEAL from the chancery court of Tunica county.
HON. M. E. DENTON, Chancellor.

Suit by the heirs of W. Q. Robley against Sterling A. Withers and the Bank of Commerce & Trust Company, in which Sterling A. Withers filed a cross-bill, praying for an accounting between himself and the Bank of Commerce & Trust Company. From a decree sustaining a demurrer to the cross-bill, Withers appeals.

The facts are fully stated in the opinion of the court.

*F. A. Montgomery,* for appellant.

The question involved in this case presents, as we contend, the strongest possible case for equitable relief. Here the Memphis Trust Company, having a mortgage for thirty thousand dollars on W. Q. Robley's land, entered into a contract with appellant in which it agreed that when it should have sold this land out under the deed of trust through the trustee, and should itself have become the owner of it by purchase from the trustee, that it would convey it to him, the appellant, for the sum of twenty-seven thousand, five hundred dollars, twenty-five hundred dollars cash and the balance in ten promissory notes of twenty-five hundred dollars each, with interest thereon.

Pursuant to this agreemnt the Memphis Trust Company instructed its trustee to sell under the Robley trust deed. He sold and the Memphis Trust Company became the purchaser for the sum of fifteen thousand dollars, credited on the mortgage debt, and in pursuance of its agreement with Withers, more than ten years ago, on the 10th day of December, 1901, sold and conveyed the land to Withers for twenty-seven thousand, five hundred dollars, of which twenty-five hundred dollars was paid in cash and of the balance, of which Withers has paid all but four notes with interest, and has been all the time since December 10, 1901, in possession of the land, under the warranty deed in which he naturally felt that he has a right to rely upon the trust company to protect him in his title, and in its warranty that he should not pay more than twenty-seven thousand, five hundred dollars for the land.

Yet it turns out that in 1905 a bill is filed against the trust company, and against this appellant by the heirs of Robley, to cancel the trustee's deed at the foreclosure sale to the trust company, and their deed to Withers, appellant, because in fact, they were not seized of the land in fee and had not the right to convey it, and after the matter had been litigatged through the courts for several years finally at the March Term of the Supreme court, 1909, more than seven years after appellant had bought this land by warranty deed from the appellee, the supreme court on review of all the testimony in that case held the title to be bad, that the sale of the trustee to the trust company was void, that this appellant was not even an innocent purchaser for value without notice, that no matter how much he had expended in building up and improving the plantation, no matter how secure he may have felt in the warranty deed from this wealthy corporation; that the sale by the trustee being void, the widow and children of Robley had a right to an accounting for

the rent for all the years in which he had been in possession, to be credited with all this on the mortgage debt, and to redeem the land by paying the balnce which this appellant in his cross-bill alleges would not exceed nineteen thousand dollars.

He must, therefore, after paying all the purchase money and the four notes, surrender all the advantages he may have obtained from the purchase, all the possibly increased value of the plantation, due perhaps to his own exertion in making it a better place. Give up his trade and the plantation and permit the Robley heirs to take the land back and redeem it; and if he did that, all that he could get of course, would be the money that he had paid to purchase it and interest theron, whether the interest was less than the rents he would have to account for or not.

This was clearly the effect of the decison of the supreme court in this case on the first appeal. *Robley* v. *Withers,* 95 Miss. 318; *Railroad Co.* v. *Bannister,* 89 Miss. 808; *Mortgage Co.* v. *Todd,* 84 Miss. 522; *Watson* v. *Perkins,* 88 Miss. 63.

To avoid this very disastrous result to him he avails himself of the opportunity to buy the outstanding, paramount title existing in the heirs of Robley, paying eight thousand dollars in cash for it, and his vendor and warrantor having refused to make him whole he files in this case his cross-bill to recover it back on the warranty.

If the demurrer to the cross-bill shall be sustained a most inequitable injustice will have been done by this corporation to this appellant. He will have been forced, in order to protect himself from the consequences of a breach of their warranty, instead of paying twenty-seven thousand, five hundred dollars for the land, to pay thirty-five thousand, five hundred dollars for it, and all because of a breach of the warranty. He is either bound to do this or cancel a solemn trade which they have made with him and take his money back and lose his trade.

We submit that it is not only inequitable to sustain this demurrer, and not only a great injustice to this appellant, but that the demurrer is not well taken.

A vendee in possession, as this appellant is, is entitled to be repaid the money he has expended in buying an outstanding title. *Hardeman* v. *Cowan,* 10 Smedes & Marshall, 486; *Chaplin* v. *Dodson,* 13 Smedes & Marshall, 563; *Hill* v. *Washington,* 2 George, 307. And he is entitled to have the same credit on the purchase money, if the outstanding title is good. He need not even wait to be dispossessed and then sue on the warranty, but may purchase the outstanding title to avoid the eviction, and sue his vendor either in equity or in assumpsit to recover. on his warranty the money expended. *Kirkpatrick* v. *Miller,* 50 Miss. 521; *Dyer* v. *Britton,* 51 Miss. 270; *Pevey* v. *Jones,* 71 Miss. 647; *Holloway* v. *Miller,* 84 Miss. 776. He doesn't have to even wait until a suit is threatened if the true owner has given notice in some way that he will assert his claim. *Green* v. *Irving,* 54 Miss. 450; *Holloway* v. *Miller, supra; Wade* v. *Barlow,* 54 So. 664; *Coopwood* v. *McCandless,* 54 So. 1007.

Now in answer to this claim the appellee, by its demurrer, admits everything that is alleged in the cross-bill.

The first ground of demurrer says that the heirs of Robley have only an equity of redemption in the land, and that the amount of money which the heirs would be required to pay for the redemption exceeds the amount which appellant paid, together with the amount that he is owing the Bank of Commerce & Trust Company, and all interest thereon, yet it is alleged in the cross-bill and admitted on demurrer as follows: "Cross-complainant avers that upon an accounting with the said widow and heirs of the said W. Q. Robley with reference to matters involved in the original bill in this cause, charging the said widow and heirs with the said six promissory notes for five thousand dollars each executed by the said W. Q. Robley and with interest thereon, and the annual taxes

on the land in controversy, and crediting them with the rental value of said land up to the time of the execution of said deed by said widow and heirs to your cross-complainant, the balance due on said six promissory notes would be and is less than one thousand dollars as of the date of the execution of the deed last aforesaid.

So the first ground of demurrer falls to the ground because it is in conflict with the allegations of the cross-bill, which are to be taken as admitted for the purposes of the demurrer.

The second and third grounds of demurrer may be treated together, the second ground being that Withers as the assignee of the heirs of Robley does not offer to pay the amount which the heirs of Robley would be required to pay to the Bank of Commerce & Trust Company for the redemption of the lands described in the cross-bill.

In the third ground, because on the face of the cross-bill it appears that appellant, as assignee aforesaid, is indebted to the appellee in a larger amount than the amount at which the Memphis Trust Company sold the land to cross-complainant with interest.

Now if it be true that Withers is, as the assignee of the heirs of Robley, indebted to this appellee for whatever the Robley heirs would have to pay, it is clear, if the allegations of the cross-bill are true (and they are to be taken as such), from the paragraph which I have quoted, that it is not true that he would be indebted in a larger amount than the sum at which the appellee sold the land to him.

It is distinctly alleged that on the accounting the Robley heirs would not have owed the Bank of Commerce & Trust Company more than nineteen thousand dollars on the mortgage debt, and as the Memphis Trust Company sold the land to appellant for twenty-seven thousand, five hundred dollars, there would be a difference of eight thousand, five hundred dollars between the two  sums.

That is to say, according to the allegations of the cross-bill, the heirs of Robley would be indebted to the Bank of Commerce & Trust Company in less amount by eight thousand, five hundred dollars than the amount at which the Memphis Trust Company sold the land to appellant (twenty-seven thousand, five hundred dollars); and therefore the amount which he has paid to extinguish the Robley claim is five hundred dollars less, added to the amount that the Robley heirs would owe, according to the allegations of the cross-bill, to wit, nineteen hundred dollars, would be twenty-seven thousand dollars or five hundred dollars less than the purchase price at which he bought.

So it is equally clear that the second and third grounds of demurrer, as we submit, are not tenable.

As to the fourth ground of demurrer it only relates to the right of this complainant to recover costs and attorney fees, and does not reach the entire cross-bill.

But how can this appellee, who, though called the Bank of Commerce & Trust Company, under another name being the same artificial person which has changed its name, be heard to say in a court of equity, especially, that it is true that it contracted with Withers before it foreclosed the deed of trust, that if it did foreclose it and bought the land in itself it would sell it to him for twenty-seven thousand, five hundred dollars and no more; and to which corporation Withers had obligated himself in that contract that if it did buy this land itself, he would take it off their hands, and not at the price they bid it in, but for twenty-seven thousand, five hundred dollars; and when the land was sold and bought in by this corporation it did not at that sale pay twenty-seven thousand, five hundred dollars for it, but the interesting sum of twelve thousand, five hundred dollars less, to wit, fifteen thousand dollars, holding Withers to his contract to buy and to sell, convey and warrant the land to him for twenty-seven thousand, five hundred dollars, which con-

tract he executed on his part, and it to the extent of giving him a warranty deed, executed on its part.

Now how can they be heard to say, even if it were true that the Robley heirs owed it thirty thousand dollars under which it had sold and bought in the land by a sale which proved to be void, that he, in his attempt to extinguish the paramount title by taking a deed from the Robley heirs and paying therefor eight thousand dollars, must, to make that good, pay his own vendor more than he contracted to pay them.

We submit that the case of *Allen* v. *Miller,* lately decided by this court, 54 So. 731, is not in point with the case at bar.

In the case cited the mortgage company that bought in the land under its own mortgage conveyed it by quitclaim to Earns, who in turn by quitclaim conveyed it to Lyle, who in turn conveyed it to Miller, and Miller conveyed by warranty to Allen. The mortgage company was under no obligation to protect the title as in the case at bar, and if the sale had been made by the British American Mortgage Company to Earns and with a warranty deed, and after Earns had gone into possession under that deed, and after the chancery court, at the suit of Tillman, the original owner, had decreed the sale by the trustee for the mortgage company to be void; and the mortgage company's vendee and warrantee had then purchased the equity of redemption, could it have been heard, as against its own warranty, to set off the original debt against the suit of its warrantee for reimbursement?

That is the case at bar and not the facts in the case of *Allen* v. *Miller, supra,* and we submit that the decree of the chancellor sutaining the demurrer to the cross-bill of appellant was erroneous, that the demurrer should be overruled and the cause remanded.

*Watson & Perkins,* for appellant.

The Memphis Trust Company not only had notice of the suit brought by the Robleys, it was a defendant there-

to, and through its counsel had complete charge of the defense in the chancery court, as well as in the supreme court, therefore the decree of the supreme court is conclusive on Withers and on the Memphis Trust Company that the Robley title is the paramount title. *Kirkpatrick v. Miller,* 50 Miss. 521, was decided on demurrer to a declaration in assumpsit, which averred that after a judgment in ejectment in favor of the paramount title and the issuance of a writ of possession thereon, but before the service of the writ, the covenantee purchased the paramount title; the damages claimed was the amount expended in the purchase.

The said case of *Hardeman* v. *Cowman* was overruled in 59 Miss. 138, but only as to the estoppel of the wife. *Green* v. *Irving,* 54 Miss. 450.

Action at law, covenant on general warranty of title. The land was unoccupied woodland. The covenantee claimed to have abandoned the possession. The court, at page 456, says: "Apart from the cessation in the payment of taxes, this abandonment must have been purely mental since after the eviction from the Clements quarter there was no tangible" (actual) "possession to be abandoned." *Brooks* v. *Block,* 68 Miss. 161.

Attachment in chancery for breach of general warranty. Suit by remote vendee who paid his immediate vendor less than was paid the covenantor. The case is silent as to mesne profit and interest. The controversy was whether the covenantor was liable, first, for the price received by him or for the lesser sum paid by the complainant; second, for court costs in the ejectment suit; and third, for attorneys' fees in the ejectment suit. Held (COOPER, J.), covenantor liable for price received by him and for court costs in the ejectment suit, and not liable for attorneys' fees. *Mortgage Co. v. Todd,* 84 Miss. 522.

Action at law for breach of general warranty. Held, as shown by the syllabi: First. Interest is not recoverable where covenantee has been acquitted of liability

for mesne profits without paying the same, and that the proportion that interest bears to mesne profits is immaterial. Second. The measure of damage is not affected by the proportion that exists between mesne profits received by covenantee and his outlay for taxes and improvements. Third. "The surplus of mesne profits received by an evicted grantee in excess of his outlay for improvements and taxes cannot in an action for breach of warranty of title be set off against the purchase money of the land on the ground that the same has been credited upon a mortgage debt due to the warrantor, in an equity suit wherein the mortgagor has procured the cancellation of the warrantor's purchase of the land under an invalid foreclosure of the mortgage." *Railroad Co.* v. *Banister,* 89 Miss. 808.

Action at law for breach of the covenant of general warranty. The covenantee had surrendered possession after suit brought by the holder of the paramount title. The land was insusceptible of producing rent and none was paid. Held, measure of damages was purchase money and interest. *Dwyer* v. *Britton,* 53 Miss. 270.

Action at law. Covenant, on general warranty of title. Demurrer sustained with leave to sue in assumpsit. Purchase of paramount title. "As has been observed, the purchaser may surrender possession to the owner of the paramount title and this is an eviction, which entitles him to a recovery on his covenant. But he may also purchase the paramount title in a proper case without yielding possession, and be entitled to recover from his covenantor." 2 Dev. Real Est. Deeds, sec. 298.

Damages for breach of covenants of quiet enjoyment and of warranty. "In some of the states the measure of damages for a breach of these covenants is the value of the land at the time of injury, by defect of title and eviction. But the general rule now is that the damages for a breach of these covenants are measured by the consideration, or what the land was worth as determined by the

parties or by the consideration price, together with interest to the time the purchaser has lost the mesne profits, and also the costs and expenses incurred by the covenantee in defending the suit to evict him." "If the eviction is by a paramount lien, damages may be recovered to the extent of the lien if this does not exceed the amount that could be recovered for an eviction for failure of title. If the adverse title has been extinguished, the covenantee may recover what he has paid therefor, with a fair remuneration for his trouble, and he will also be allowed the reasonable incidental expenses. But the total amount cannot exceed what he could recover for a total loss of title." *Ib.,* sec. 934, pages 1745-47.

Covenants for title. When plaintiff is in possession. "In an American case where it appeared that there was an outstanding paramount title, which the plaintiff had purchased in, having been all the time in possession, it was held that he was not entitled to recover the whole consideration money with interest but only the amount paid to perfect the title with interest from the time of payment." Wood's Mayne on Damages. (1 Am. Ed.) sec. 250, p. 288.

The controlling question in this case is: As of what date the account between the Robley heirs on the one part, and *Sterling A. Withers* on the other part, is to be stated? The case of *Green* v. *Irving,* 54 Miss. 450, settles it that Withers had no right as against his covenator to buy in the outstanding paramount title of the Robleys until there had been some hostile assertion of that title. There never was any assertion of that title by the Robleys until the filing of the original bill in this case, to wit, April 18, 1905. (See Tr. on former appeal, vol. 1, p. 25.) On July 29, 1905, Withers and his vendor, the Memphis Trust Company (now represented by its successor, the Bank of Commerce & Trust Company) filed their joint and separate answer to the said bill of complaint of the Robleys wherein they denied *in toto* the ti-

tle of the Robleys. (See Tr. on former appeal, vol. 1 p. 86.) The case made by the bill and answer was litigated at length on full proof by the Robleys on the one part and Withers and the Memphis Trust Company on the other part, until, in due course, on December 1, 1906, a final decree was entered dismissing the bill of the Robleys and thereby adjudging that they had no claim to the land. That was a decree of a court of competent jurisdiction, and was, of course, binding upon all of the parties until reversed. At the October term, 1909, of the supreme court, to wit, on the 8th day of February, 1910, the supreme court reversed the decree of the chancery court and held that the Robleys had a paramount title subject to the deed of trust which W. Q. Robley had executed to secure the purchase money, and were entitled to redeem from that deed of trust. And on the 25th day of April, 1910, the mandate and opinion of the supreme court was filed in the chancery court. The property in controversy is principally agricultural lands. It has no rental value except as agricultural lands, and so, upon any accounting between Withers and the Robleys after April 25, 1910, Withers would have been chargeable with the rents of the year 1910. On the 26th day of September, 1910, Withers paid the widow and heirs of W. Q. Robley eight thousand dollars in cash and obtained from them a deed conveying to him the land in controversy. In other words Withers purchased the paramount, outstanding title at an expenditure of eight thousand dollars, at practically the earliest moment at which he had a right to purchase it. He couldn't purchase it before the filing of the bill by the Robleys, because that was the first assertion of adverse title on their part. He couldn't purchase it pending the litigation with regard to the Robley title, to which the Memphis Trust Company, as well as himself, was a party, because the Memphis Trust Company had a right to contest that title and he also had the same right. He couldn't purchase it after the decree had been

rendered by a court of competent jurisdiction that the Robley title was not a paramount title, and he did purchase it as soon as the Supreme Court sustained the Robley title. Of course, that made him liable to account to the Robleys for the rents of the years 1900 to 1910, inclusive, in all eleven years' rent, and made the Robleys liable to account to Withers for the taxes of the same years, which had been paid by him.

The case of *Allen* v. *Miller,* 99 Miss. 75, recognizes the principle for which we are contending. At page 81, Commissioner McLAIN, whose opinion was adopted by the court says: "The measure of his liability to Allen on this breach of warranty is the amount of purchase price paid by Allen to Miller with interest. In no case would Miller be liable to refund more than was actually paid out by Allen to protect his title, and in no event in excess of his liability on his covenant of warranty."

And on page 82 he also says:

"It manifestly appears from this record that Miller is liable to Allen upon his covenant of warranty in the sum of nine hundred dollars with interest, and this is the limit of his liability. It is equally manifest that Miller has a decree of the chancery court fixing a charge upon this land for an amount as large or larger than Miller's liability. We think Miller has a right to offer this decree as an offset to Allen's claim."

And so we say that if, at the proper time for the statement of the account between Withers and the widow and heirs of Robley, Wither's claim against the widow and heirs had exceeded the claim of the widow and heirs by an amount equal to the twenty-seven thousand five hundred dollars, for which the Memphis Trust Company had warranted the title to Withers, then Withers unquestionably would have had no claim against the Memphis Trust Company or its successors, the Bank of Commerce & Trust Company, but inasmuch as at that time the claim of Withers against the widow and heirs of Robley was

eight thousand five hundred dollars less than the twenty-seven thousand five hundred, the amount of his claim on the warranty, and inasmuch as he only paid eight thousand dollars to obtain the paramount title of the Robleys, then in the language of the court in *Kirkpatrick* v. *Miller*, 50 Miss. 521, Withers paid eight thousand, which the Memphis Trust Company and its said successor was under a primary obligation to pay and which in equity and conscience they ought to refund to Withers.·

The case of *Spring* v. *Chase*, 22 Me. 505, 39 Am. Dec. 595, is more like the case at bar than any case we have been able to find.

The Bank of Commerce & Trust Company virtually claims that as between it and Withers, Withers is not entitled to the rents of the property during the eleven years he occupied it, between the date of the warranty deed made to him by the Memphis Trust Company and the date of the conveyance to him by the Robleys. Of course, as between Withers and the Robleys, the latter asserting and sustaining a paramount title, Withers was liable to the Robleys for rents; but what principle of law or equity prevents Withers from asserting as between himself and the Memphis Trust Company and its successors, the Bank of Commerce & Trust Company, that he was in possession under a warranty of title from the Memphis Trust Company, and as owner, was entitled to the rents?

We respectfully submit that the decree of the chancery court should be reversed and the demurrer to the cross-bill overruled.

*Tim E. Cooper,* for appellee.

To maintain the cross-bill in this case, it is submitted that the court must hold either: First, that the Memphis Trust Company can be held ·liable beyond the amount covered by its warranty and interest thereon, or, second, that the Robley heirs could recover the land

without paying the amount of the mortgage debt due by Robley and interest thereon.

I have conceded that an actual eviction of Withers, or a surrender of possession by him was not necessary. But that he might protect his possession by making any necessary outlay and either sue in equity or in assumpsit at law to recover the amount. This rule is well settled in this state. *Hardeman* v. *Cowan,* 10 S. & M. 486; *Ayres* v. *Mitchell,* 3 S. & M. 683; *Champlin* v. *Dotson,* 13 S. & M. 553; *Hill* v. *Samuel,* 31 Miss. 307; *Dyer* x. *Britton,* 53 Miss. 270; *Phipps* v. *Tarpley,* 31 Miss. 453; *Brooks* v. *Black,* 68 Miss. 161; *White* v. *Pressley,* 54 Miss. 314; *White* v. *Tucker,* 52 Miss. 142.

Sutherland on Damages thus lays down the rule saying: "The measure of compensation is not the same in all the states. In a majority the consideration, or the value of the land at the time of the sale is then agreed upon by the purchase, or is determined by the price paid with interest for such time as the purchaser has been deprived of, or is accountable to, the superior owner for mesne profits, together with the costs and expenses insurred in the defense of the action by which the injured party was evicted, is the measure for a total failure of title." 2 Sutherland on Damages, sec. 605.

In so far as by the cross-bill it is sought to recover the court costs paid by Mr. Withers, our reply is twofold. In the first place, no cross-bill was necessary. The matter of the adjudication of the costs is within the power of the chancellor and can be settled on a final decree without a cross-bill. If Mr. Withers was entitled to have a decree adjudicating this cost against the Bank of Commerce, he could clearly have amended his answer or filed a supplemental answer. In such cases, a cross-bill is not maintainable. *Buckingham* v. *Wesson,* 54 Miss. 526.

The whole of appellant's case, therefore, rests upon the proposition that because he was liable to the Robley heirs for the reasonable rental value of the property

bought, he can charge up against the Memphis Trust Company such reasonable rental value although the same exceeded the interest on the notes he had given. The whole of appellant's case, therefore, rests upon the false premise, as I shall attempt to show, that the covenant of warranty is a covenant of indemnity, using the word "indemnity" in the sense that a grantee is entitled to be made whole, even though to reach that result the warranty must be extended beyond the amount of the purchase money and interest thereon. There are five states in the Union in which this result would be reached. They are Connecticut, Maine, Massachusetts, Vermont and Louisiana. In Louisiana, this result follows from a statute. In the other states, the rule was settled at an early day and has since been adhered to. But all the other American states, including Mississippi, have followed the decisions of Chancellor KENT in the case of *Staats* v. *Ten Eycks, Err.,* 3 Caines, 111, 2 Am. Dec. 254, and by Senators Vanness, Spencer and Kent in the case of *Pitcher* v. *Livingston,* 4 Johnson, 1, 4 Am. Dec. 229. The extent and limit of the liability of a warrantor were settled in those cases which furnish the groundwork of the American Law on the subject. If anything in American jurisprudence outside of the states above named, in which a different rule seems to apply can be considered as settled, it is that the covenant of warranty is not a covenant of indemnity. It is a mere covenant by which upon a failure of title the amount of the purchase money received by the grantor with interest thereon for so long a time as the evicted vendee is liable to the holder of the paramount title for rents is recoverable against the vendor. No matter whether the value of the property at the time of eviction is increased or diminished, since the covenant was made, the measure of recovery is precisely the same.

Whatever rule might have been established, it is evident that under peculiar circumstances it would not op-

erate in all cases to produce exact justice.   In *Elliot* v. *Thompson,* 4 Hump. 99, Judge REESE, in delivering the opinion of the court, said: ''Earlier cases on this subject in this state are marked by some fluctuation in the principle of compensation.   But the question has been fully settled and for a considerable length of time in favor of the consideration price, and against the value at the eviction.   Peculiar cases have arisen and will arise, where the enforcement of the one rule or the other would fall short of or exceed the just claims of liability of the one party or the other.   But having established a general rule on the subject, it is our duty on grounds alike of justice and policy and in courts of equity as well as in courts of law, inflexibly to adhere to it.''

Keeping in view the well-settled law that as between the appellant and the appellee, interest on the purchase money debt is deemed in law as the equivalent of mesne profits, it seems to be certain that whatever may have been the liability of Withers, the appellee, to the Robley heirs for the rental value of the land, it cannot be charged up against the appellee in excess of the interest on its debt.

The whole subject is fully dealt with, not only in the opinion which I have cited, but by all approved text-writers.   I refer the court particularly to the discussion by Mr. Wawle in his works on ''Covenants for Title.''

The Court will observe that I am just here turning aside from a consideration of the main question to consider briefly the obligation of the appellant to pay interest from the date of his purchase from the Robley heirs, to the present.

I do not know that counsel for the appellant will contend that he is not liable to pay interest after his purchase from the Robley heirs.   Their claim, as formulated in the cross-bill, is to have the amount of eight thousand dollars allowed to them as a credit on the debt due to the appellee, because, as it is averred, the Robley heirs could

698 WITHERS *v.* BANK. [Sup. Ct.

have recovered from the appellant, as rents of the property, eight thousand dollars in excess of the interest on the debt due by the Robley heirs as mortgagors.

The reason why the grantee is allowed to recover interest on the purchase money for so long a time as he may be called to account to the true owner for rents and profits, is because that for such time he is not treated as enjoying the premises by virtue of the grant. For that length of time he is treated as the tenant of the owner of the paramount title. The supreme court of Texas in the case of *Brown* v. *Hearon,* 66 Texas, 63, quotes as as follows from Sutherland on Damages with approval:

"In case of eviction by the owner of the superior title, he is entitled to recover mesne profits for such period as is allowed by the statute of limitations. For this period, the grantee is treated as not enjoying the granted premises by virtue of the grant; and for the time he is so liable, as well as for the time succeeding actual eviction, for the fact which is treated as equivalent thereto, interest is recoverable on the principle of the damages allowed. Whenever the circumstances are such as to preclude any recovery for mesne profits, interest will not be allowed until eviction."

In *Thompson Heirs* v. *Jones,* 11 B. Monroe, 365, the vendee, not having accounted to the paramount owner, bought in his title and the court says that he thus "took shelter under the title of Taylor and it is now impossible that an action for mesne profits can ever be maintained against him." *Cogswell's Heirs* v. *Lyon,* 3 J. J. Marshall; *Harding* v. *Larkin,* 41 Ill.

It is not contended by appellant that he is entitled to anything or to set off anything unless the law is that he can recover as against the Memphis Trust Company more than the purchase money and interest, because he might have been called on by the Robley heirs to pay as rents, more than the interest on the amount of the purchase money he agreed to pay.

Appellant admits that as purchaser from the Robley heirs he must account to the appellee for what the Robley heirs must have paid to redeem the lands. But he contends that the debt due by the Robley heirs to the Memphis Trust Company is to be reduced by the value of the rents which the Robley heirs might have recovered against him.

The appellee concedes that if the covenant of warranty is a covenant of indemnity that the appellee is entitled to recover. It denies the right of recovery because it contends that the covenant of warranty is not a covenant of indemnity.

The issue is clear-cut, narrow and precise. It is not to be obscured. It is not denied by the cross-bill that appellant has had the possession of the land from the date of the conveyance to him by the Memphis Trust Company until the date of his purchase from the Robley heirs, September, 1910. From that time to this he has held both titles. What he got from the Robley heirs was not the right to the land, but the right to the land upon payment of the Robley notes and interest. The Robley notes and interest exceed in each year the notes and interest due by appellant under his purchase. This is but a matter of figures and is clearly shown by the statements I have made on the data from the cross-bill.

If the Robley debt and interest only equalled the purchase money and interest agreed to be paid by the appellant, the result would be just he same as if the Robley debt and interest exceeded by a million dollars the debt due by the appellant to the appelle.

As decided in the cases I have cited, of *Spring* v. *Chase*, 22 Me. 502, *Thompson* v. *Jones*, 11 B. Monroe, 365, and *Cogswell* v. *Lyon*, 3 J. J. Marshall, the appellant, having bought in the Robley title, cannot be held to account for rents by them, and cannot call himself to account; and so the question of rents is eliminated.

If he had bought in a paramount title he might be considered as thereafter holding under that title and claim a

stoppage of interest from that time. But he did not buy such a title.

On January 10, 1912, (approximately the date when the appellant bought the land) the Robley heirs owed $28,374. At that time the appellant owned as purchase money $27,660.41. Now the appellee does not claim that it should be paid both these sums and interest; it does claim that it should be paid one of them and interest.

The rate of interest is the same six per cent. and it matured annually on both debts. If the Robley heirs had claimed rents, as they did not, they of course could not have also claimed to be released from paying interest on their debt. Automatically the debt would have borne interest.

If they did not claim rents, as they did not, the appellee was not relieved of the payment of the interest due on his debt. *White* v. *Tucker,* 52 Miss. 145; *Yazoo R. R. Co.* v. *Barrow and Mannister,* 89 Miss. 808; *Mortgage Co.* v. *Todd,* 84 Miss. 522; *Allen v. Miller,* 99 Miss. 75.

It is therefore confidently submitted: First. That the appellant was never called upon to account for such profits by the Robley heirs and, having bought in that title, he cannot call himself to account and so no rents and profits could ever be claimed as against appellee. Second. That if appellant had, in fact, paid to the Robleys eight thousand dollars as rents, he could not recover from the appellant this eight thousand dollars, as upon the very face of the bill it is charged to be an amount in excess of the interest on his debt.

Argued orally by *C. Perkins,* and *F. A. Montgomery,* for appellant and *Tim E. Cooper,* for appellee.

SMITH, C. J. delivered the opinion of the court.

This cause, or rather one feature thereof, was passed upon by this court once before, and will be found reported under the name of *Robley* v. *Withers,* 95 Miss.

318, 51 South. 719. The facts material to the present controversy may be stated as follows:

On January 15, 1900, Austin Miller sold to W. Q. Robley a plantation situated in Tunica county for the recited consideration of thirty-two thousand seven hundred dollars, of which two thousand seven hundred dollars was paid in cash, and Robley gave to Miller six notes, of five thousand dollars each, maturing in one, two, three, four, five, and six years, respectively, with interest at six per cent. per annum, payable annually, secured by deed of trust upon the property. These notes and the deed of trust were assigned by Miller to the Memphis Trust Company, now known as Bank of Commerce & Trust Company, as security for a large debt that he owed that concern. After the death of Robley the Memphis Trust Company took possession of the plantation as mortgagee and rented it to the cross-complainant, Sterling A. Withers, for the year 1901, at a rental of two thousand six hundred and fifty dollars. On the 4th of December, 1901, the deed of trust executed by Robley to Miller was foreclosed by the Memphis Trust Company, and it became the purchaser of the plantation therein conveyed at the trustee's sale. On the 10th of December it sold this property to Withers by deed, with full covenants of warranty, at the price of twenty-seven thousand five hundred dollars, of which Withers paid in cash two thousand five hundred dollars, and gave to the Memphis Trust Company ten notes, for the sum of two thousand five hundred dollars each, payable in one, two, three, four, five, six, seven, eight, nine, and ten years respectively with interest at six per cent. per annum, payable annually.

Withers went into possession of the land, and has so continued. The Robley heirs exhibited the original bill in this cause, to which both appellant and appellee were parties defendant, assailing the validity of the trustee's sale under the deed of trust given by Mr. Robley, and

on appeal this court held that sale to be void. 95 Miss. 318, 51 South. 719. When the case was remanded, Withers compromised, or bought in the title of the Robley heirs, paying them therefor eight thousand dollars, and thereupon filed this cross-bill, praying for an accounting between himself and appellee as to the amount yet due by him on his purchase of the land, and seeking to have the eight thousand dollars paid by him to the Robley heirs credited on his notes, and also to have credit for two hundred and fifty dollars paid as attorney's fees and sixty-one dollars and five cents paid by him as court costs in the present litigation; that is, court costs for which the Robley heirs might have been liable because of their original bill herein. To this cross-bill a demurrer was interposed and sustained, and this appeal is to settle the principles of the case.

It is well settled in this state, and, for that matter, seems to be in most of the states of the Union, following the rule laid down in the case of *Staats* v. *Ten Eyck*, 3 Caines (N. Y.), 111, 2 Am. Dec. 254, and *Pitcher* v. *Livingston*, 4 Johns. (N. Y.) 1, 4 Am. Dec. 229, from the supreme court of New York, that a grantor, upon the total breach of a covenant of warranty contained in a conveyance of land, is liable to the grantee only for the amount of the purchase money received by him, with interest thereon for so long a time as the grantee has been compelled to account to the true owner for rents and profits, together with costs of suit incurred in defending against the efforts of the true owner to recover possession of the land conveyed. Interest on the purchase money paid by the grantee and the mesne profits of the land while in his hands are considered by the law as the equivalents of each other, and where an accounting for mesne profits has not been required the interest cannot be recovered. *Phipps* v. *Tarpley*, 31 Miss. 433; *Brooks v. Black*, 68 Miss. 161, 8 South. 332, 11 L. R. A. 176, 24 Am. St. Rep. 259; *White* v. *Presly*, 54 Miss. 314; *White* v. *Tucker*, 52

Miss. 145; *Allen* v. *Miller*, 99 Miss. 75, 54 South. 731; 2 Sutherland on Damages (3 Ed.), 605.

It is also well settled that, where such a grantee has been compelled to purchase an outstanding title, he can recover from his grantor the money necessarily expended by him for that purpose; and appellee's contention here is that this eight thousand dollars, paid by him to the Robleys, was for the purchase of an outstanding title, and therefore he is entitled to recover it from appellee, or rather to set it off against whatever amount he may still owe appellee for the land.

The case here presented, however, is not an ordinary one of the purchase of an outstanding title. What appellee in fact purchased was simply an equity of redemption, the acquisition of which, it is true, tended to perfect his title, but which he acquired, nevertheless, charged with the burden of the deed of trust to secure the payment to appellee of the Robley debt, the payment of which he is relieved of only by reason of the fact that it (the deed of trust) is held by his own grantor, by whom his title had been warranted. And, moreover, it is clear from the allegations of the cross-bill that this eight thousand dollars, as the price to be paid by appellant to the Robley heirs for their interest in this land, was arrived at by taking the amount which he would have had to pay them as rent for the time during which he had been in possession thereof, and deducting therefrom the interest which they would have had to pay appellee on the debt due by them, which interest exceeded the amount of interest due by appellant to appellee on his own debt.

The effect, therefore, of what occurred between appellant and the Robleys was simply this: That they abandoned all claim upon the land upon the payment to them of the rent due thereon by appellant, less the interest that they would have had to pay on the debt due by them to appellee. Had appellant not purchased this equity of redemption, leaving it to be asserted by the

Robleys, they would have paid this interest along with the remainder of their debt to appellee, and had they then called upon appellant for an accounting for rent he could, in that event, recover from appellee the interest he had paid in, and no more, losing, just as he must lose here, the excess of the rent he has paid over the interest. From this it appears that the real controversy here, in the last analysis, is over the question of liability for rent. This being true, appellant is not entitled to charge this eight thousand dollars against appellee under the rule hereinbefore set out, for the reason that he has received the benefit of the interest paid by him to appellee in the settlement had by him with the Robley heirs.

In order for us to uphold appellant's contention, it will be necessary for us to overrule the cases herebefore cited and hold that a covenant of warranty contained in a conveyance of land constitutes a promise on the part of the grantor to indemnify the grantee for any and all damages he may suffer by reason of the breach thereof, and this we cannot do. It may be that the rule herein applied will work injustice in some cases, but any rule the courts might adopt would have that effect, for the law is not an exact science, and many of its rules are imperfect, and do not work out exact justice in all cases. Experience has demonstrated, however, that the rule herein applied, the reasons for which have been clearly stated by Chancellor Kent in the cases of *Staats* v. *Ten Eyck,* 3 Caines (N. Y.), 111, 2 Am. Dec. 254, and *Pitches* v. *Livingston,* 4 Johns. (N. Y.) 1, 4 Am. Dec. 229, will result in administering exact justice in a great majority of cases, and this is all that the law can or attempts to do. Human wisdom falls so far short of perfection that it could not be otherwise, and, moreover, a general rule for administering justice, once adopted and not demonstrated to be clearly wrong, should in no case thereafter be bent or broken because of seeming hardships resulting from its application to the particular case, or be-

cause of the disapproval thereof by the judge called upon in the particular case to administer it.

In the language of the brief of counsel for appellee: "It is difficult to be wiser than the settled law. If it were possible in any human tribunal to reach exact justice in each and every case without regard to settled, and and it may be arbitrary, rules, the perfection of human justice would be reached. But the effort to reach what seems to be just and equitable results, by disregarding well-settled principles, is sure to result in the doing of injustice in by far the greater number of cases. Whatever may be the wisdom of particular judges, mankind do not make their transactions with any knowledge whatever of the way in which the minds of particular judges act. They accept settled rules as fixing their rights and liabilities, and deal with reference to them." Should a grantee in a deed desire an enlarged covenant of warranty, it may, when the deed is executed, be easily so worded as to have the desired effect.

Under the rule announced in the case of *Brooks* v. *Black*, 68 Miss. 161, 8 South. 332, 11 L. R. A. 176, 24 Am. St. Rep. 259, appellee cannot recover the two hundred and fifty dollars attorney's fees paid by him, and, in so far as the item of court costs is concerned, that is a matter which can be adjusted by the court without a cross-bill on final hearing.

*Affirmed and remanded.*