## RICHMOND FAIRFIELD RY. CO. v. UNITED STATES HOUSING CORPORATION.
### No. 6127.

United States Court of Appeals for the District of Columbia.

Argued May 10, 1934.

Decided June 11, 1934.

Guy Mason and W. W. Spalding, both of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., John J. Wilson, Asst. U. S. Atty., and Thomas W. O'Brien, Gen. Counsel, U. S. Housing Corporation, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

The United States Housing Corporation (appellee) was one of the instrumentalities used by the government in the prosecution of the late war. It owned certain lands located in Henrico county, Va., on which it had begun the building of a new town. In 1918–19 the question of sewage disposal for the town became acute, and appellee negotiated with the owner of nearby property for the right to construct and operate a sewage system across her lands. Apparently the effort was abortive, for in 1919 proceedings were begun and carried out under the provisions of an Act of Congress (Act May 16, 1918, c. 74, 40 Stat. 550) for the acquisition of the easement by requisition, and the right of way taken under the requisition embraced a strip of land 24 feet wide running the entire length of the property in question. Thereafter ap-

pellee constructed a ditch on the right of way and placed in the ditch 15-inch sewer pipes, which in turn it connected with the houses in the village.

In 1920 appellee sold and conveyed by general warranty deed the town property, including the sewer line, to appellant, but at the time of transfer the sewer line had not been completed. In addition to the usual warranties and covenants of title, the Housing Corporation expressly agreed to "defend at its own expense any action or suit which may be brought involving any part of said strip (sewer line) or the proper use thereof, and will pay any and all judgments which may be obtained against [appellant] on that account, provided, however, that this paragraph shall be inoperative and of no effect as to claims, suits, injunctions, or judgments arising out of wrongful, improper, or negligent acts, or user, by the [appellant], its officers, agents, servants, and employees, of said 'Easement for sewer' as shown on said plat last above-mentioned." After the purchase and transfer, appellant did nothing to complete the sewer line, as a result of which sewage therefrom was continuously discharged upon the right of way where the piping ended.

In 1926 the owner of the land over which the right of way extended purposely choked up the sewer pipe and, upon her refusing to permit appellant's servants to clear away the obstruction, appellant filed its bill in equity in the circuit court of Henrico county, Va., against the landowner to restrain her from further obstructing the sewer and interfering with appellant's use and enjoyment of the easement. A temporary restraining order was granted, and a year later the landowner filed in the suit a cross-bill wherein she denied the right of appellant to the easement, on the ground that the Housing Corporation at the time of the sale possessed no title which it could convey to appellant. The issue thus made was decided adversely to appellant by the Virginia trial court.

In 1929 appellant addressed a letter to the Secretary of Labor, in which the conveyance to it by appellee was referred to, and notice given "that the matter of title is now in litigation in the Virginia court at the instance of the original owner and we hereby make demand on said [Housing] Corporation, or its successors, to come in and defend this suit under its covenant, or to stand bound by the adjudication which results." It is conceded that the notice was received and that appellee did not defend the suit.

Ultimately the case was decided by the Supreme Court of Appeals of Virginia, and the fee title to the easement conveyed by appellee was found to be in all respects valid. Richmond Fairfield Railway Company v. Llewellyn, 156 Va. 258, 157 S. E. 809, 162 S. E. 601. Appellant, however, expended in attorneys' fees and other expenses in connection with the prosecution of the appeal, etc., approximately the sum of $6,000, and it was to recover this expenditure that the present suit was brought.

In its comment on the facts leading to the controversy, the Virginia court said: "The evidence is convincing that the sewage at the place of its discharge spreads over the right of way and outside of its lines on the lands of the defendant, saturating the ground with fecal matter, which is offensive and unsanitary in the extreme. A gruesome story is told of conditions which reveal an intolerable situation." 156 Va. at page 267, 157 S. E. 809, 811, 162 S. E. 601. And again (page 285 of 156 Va., 157 S. E. 809, 818, 162 S. E. 601): "We are convinced that it was never the purpose and intention of the government to leave that sewer as it is; indeed, it is unbelievable. It had no right to do so. It never acquired the right to place a sewer through a portion of the Llewellyn property and make a dumping ground at the stopping point for the deposit of all sorts of offensive excretions. The right it acquired was an easement over the right of way through the entire tract of land as shown on the plat referred to. The presumption is that the government intended to conform to the terms of its muniments of title—not to transcend them. Its transferee and successor in title, the complainant [appellant], certainly by its admissions aforesaid recognized that the sewer was not completed, else it would not have emphasized its intention to complete it."

In view of these findings by the Virginia court, which are not challenged here, it is obvious to us that the transfer from the Housing Corporation to appellant of the easement for the sewer was intended to be no more than the transfer of the right of way and of the uncompleted sewer to the point to which it had then been extended. The pipe was in an exposed ditch, and it was apparent that it had not been continued along and across the entire right of way, and that in its then condition its discharge on the property of the landowner must of necessity create a nuisance. The conclusion of the Virginia court was that the government intended to complete the sewer so as to avoid creating a

nuisance, and that appellant took the property with notice of this fact and assumed this obligation. From all of this it is clear that the condition of the special covenant on the part of the appellee to save harmless the appellant from claims for damages asserted by reason of the use of the sewer had relation only to its proper and lawful use, and appellee's covenant to defend any action or suit involving the easement was confined by the use of proper words to responsibility only for the lawful operation of the sewer. Since, manifestly, appellant's failure to complete the sewer, and its use of the same in its uncompleted condition, was the direct and immediate cause of the litigation—whatever other reasons the landowner may have subsequently mistakenly asserted in defense of her position—it is clear that the special covenant relied upon is ineffective.

Appellant, however, insists that without regard to whether it is entitled to indemnity for its legal and other expenses in the prosecution of the suit under the provisions of the special covenant, it is entitled under its general warranty deed to be saved harmless, and, hence, to be reimbursed for these expenses. We think this position is not maintainable.

The effect of a covenant of general warranty ordinarily goes no further than to bind the vendor to defend against legal and rightful claims; not against such as are invalid and do not affect the rights or title acquired by the grantee under the deed. Here, as we have seen, the title of the vendor and the validity of the transfer to appellant were in all respects sustained and confirmed. In Virginia, where the land was located, the rule is that in such circumstances—whatever the result—the vendee may not recover expenses and disbursements as for counsel fees, etc., in defending an adverse claim. See Morgan v. Haley, 107 Va. 331, 58 S. E. 564, 13 L. R. A. (N. S.) 732, 122 Am. St. Rep. 846, 13 Ann. Cas. 204.

In the Haley Case, which was an action by a covenantee to recover damages for breach of a covenant of warranty of the land which he had lost by title paramount, it was held that the measure of damages is the price paid for the land, with interest from the date of eviction, and the legal and taxable court costs expended by him in the action. Judge Buchanan, speaking for the court, said (107 Va. at page 337, 58 S. E. 564, 566): "Since the decision in the case of Threlkeld v. Fitzhugh, 2 Leigh [Va.] 451, the settled doctrine in this state has been that the purchaser of land upon eviction is only entitled to the purchase price paid, with interest from the date of eviction and the costs expended by him in the action in which he was evicted. * * * There would seem to be no more reason for allowing expenses incurred in the employment of counsel as a part of the covenantee's damages for breach of covenant of warranty than expenses incurred in visiting and conferring with counsel, finding and interviewing witnesses, and in performing all the other duties necessary in preparing the case for trial."

In Threlkeld v. Fitzhugh, 2 Leigh (Va.) 451, the measure of recovery in Virginia was stated to be: The purchase money, with interest and costs of suit. And in that case there was successful eviction. Here there was only a baseless claim. See, also, Smith v. Parsons, 33 W. Va. 644, 11 S. E. 68, 69, where it was said: "But the covenantee is clearly not entitled to demand of the covenantor expenses in defending a suit which sustains the title as valid." The same rule is held in Massachusetts, where in Reggio v. Braggiotti, 7 Cush. (Mass.) 166, it was said that counsel fees cannot be allowed. To the same effect are Citizens' Bank v. Jeansonne, 120 La. 393, 45 So. 367; Withers v. Bank, 104 Miss. 681, 61 So. 690; Holmes v. Sinnickson, 15 N. J. Law, 313; Box Co. v. Ferguson, 124 Tenn. 433, 137 S. W. 101; Turner v. Miller, 42 Tex. 418, 19 Am. Rep. 47; Smith v. Keeley, 146 Iowa, 660, 125 N. W. 669; and Ex parte Lynch, 25 S. C. 193. In nearly all of the states which apply this rule, the reasons for it are based on the opinion of the Supreme Court in Oelrichs v. Spain, 15 Wall. 211, 230, 231, 21 L. Ed. 43.

While undoubtedly there is authority in many of the states for the recovery of expenses, including attorneys' fees, in suits for breach of covenant of general warranty, we think that we should apply the law as it is in Virginia, where the land lies, where the parties contracted, and where the litigation out of which the claims arose was begun and concluded.

But, in addition to this, there is another and controlling reason why appellant should not prevail, for, as we have seen, it was because of its neglect to put the sewer in order and extend it over the length of the right of way that this litigation was begun; indeed, it was begun by appellant in the face of a nuisance of its own creation and—after several years of litigation in the trial court, in which it lost the decision—it then, for the first time, notified appellee of the adverse claims against the title conveyed. This was not a reasonable

notice, and on that further ground we should feel impelled to deny relief.

On the whole case we are satisfied that the lower court was right in sustaining appellee's demurrer to the declaration, and its judgment should be affirmed, with costs.

Affirmed.

HITZ, Associate Justice, took no part in the decision of this case.